WINTERS et al. v. DUNCAN.    (No. 6357.)

(Court of Civil Appeals of Texas. San Antonio. March 3, 1920. Rehearing Denied March 31, 1920.)

1. **Husband and wife** ⬯273(12)—**Petition held to sufficiently allege relation of husband and wife and that property involved was community.**

As against general demurrer, the petition *held* sufficient to allege that decedent and plaintiff were husband and wife, and that the property involved was acquired during the existence of the marital relation and was community property.

2. **Marriage** ⬯52—**Definition of "common-law marriage" as living together openly held sufficient; "Publicly."**

Where plaintiff claimed to be the common-law wife of decedent, the court's definition that a common-law marriage is consummated where the parties actually agree and consent together to become husband and wife, and thereafter carry out the agreement and cohabit together openly and professedly as husband and wife, was sufficient and equivalent to a statement that the parties must hold themselves out publicly as man and wife; the word "publicly" being defined as "openly."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common-Law Marriage.]

3. **Trial** ⬯125(1)—**Argument of counsel as to common-law marriage held not objectionable though making reference to the bastardizing of issue.**

In an action by plaintiff who claimed to be the common-law wife of decedent, and as such entitled to one-half of the community property, argument based on result to plaintiff which stated that it would have the effect of bastardizing the issue is not improper; for the court cannot restrict arguments of counsel so that they cannot present the issues, and the jury would have received the same information from the pleadings.

4. **Trial** ⬯132—**Error cannot be predicated on objectionable argument, which was withdrawn.**

Where an alleged objectionable argument was withdrawn, error cannot be predicated thereon.

5. **Husband and wife** ⬯257—**Prior to 1917 rents from separate property became community, and not separate, property.**

Prior to the amendment of Rev. St. art. 4621, enacted on April 4, 1917 (Acts 35th Leg. c. 194 [Vernon's Ann. Civ. St. Supp. 1918, art. 4621]), which defines separate property, rents and revenues derived from separate property became part of the community estate, and not the separate estate.

6. **Husband and wife** ⬯262(1)—**Funds of deceased husband will be deemed community.**

Despite Rev. St. art. 4622, declaring that any funds on deposit in any bank, whether in the name of the husband or wife, shall. be presumed to be the separate property of the party in whose name they stand, at the death of a husband funds on deposit in his name will be deemed community estate; the purpose of the statute enacted in 1913 (Acts 33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624]) being primarily for the protection of married women, and, incidentally married men, by preventing the honoring of checks on their deposits by the opposite spouse, and not intended to change the general presumption on death.

7. **Husband and wife** ⬯262(1)—**On death of, husband real and personal property is presumed community estate.**

On the death of the husband, real and personal property is presumed to be community

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

estate, and the burden is on those asserting the contrary to establish it.

**8. Husband and wife ⚖═262(2)—One asserting property was separate estate of deceased husband must prove it.**

The mere fact that property presumed the community estate of a decedent might have been his separate estate is no ground for attacking a finding that the property was community estate; those asserting that it was his separate estate having the burden of proving the same.

**9. Marriage ⚖═50(1)—Evidence held to establish common-law marriage.**

In a suit by a woman who was asserted to have been the common-law wife of decedent, evidence *held* sufficient to establish that fact.

Appeal from District Court, Frio County; C. C. Thomas, Judge.

Suit by Levy Cruz Duncan against Sannie Winters and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, for appellants.

S. T. Dowe, of Pearsall, and J. D. Dodson and C. A. Davies, both of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee against H. E. Johnson, individually and as independent executor of the estate of Ben Duncan, Sr., deceased, Sannie Winters, a feme sole, Eliza Ferguson and her husband, Aus Ferguson, Betty Ferguson and her husband, W. T. Ferguson, Ben Duncan, Jr., Fred Duncan, Jake Duncan, Jess Duncan, Jim Duncan, George Duncan, and Rebecca Cook and her husband, J. B. Cook, to compel an accounting of the estate of Ben Duncan, deceased, for partition of the same so as to give her one-half thereof, and for possession of the same. Appellee claimed one-half of the property as the common-law wife of Ben Duncan, deceased. The cause was submitted to the jury on the sole issue:

"Did Ben Duncan, now deceased, and Levy Cruz, the plaintiff, consummate a common-law marriage, as hereinbefore defined, in the latter part of 1898 or early part of 1899?"

The jury answered in the affirmative, and on the answer the court rendered judgment for appellee for one-half the property, real and personal, of the estate of Ben Duncan, deceased, aggregating in value probably $200,000.

[1] The first and second assignments complain of the refusal of the court to sustain a general demurrer to the petition. It was alleged that Ben Duncan died in Frio county on November 28, 1919, and was at that time the husband of appellee, and further alleged:

"That on or about the year 1899 the said Ben Duncan and plaintiff consummated an agreement in pursuance of a promise theretofore made to plaintiff by the said Ben Duncan, an unmarried man at said time, on or about the year 1886, that he and plaintiff, she being then and there an unmarried female about 13 years of age, would marry each with the other, and be man and wife, and in reliance upon which promise plaintiff did live with the said Ben Duncan as his wife until the year 1899, at which time said promise to marry was consummated by the parties agreeing each with the other to at that time be and become man and wife for the term of their natural lives, and pursuant to said agreement the same was consummated by cohabitation and the rearing of a family of children, and said relationship and status continued continuously therefrom until the death of the said Ben Duncan, and all property acquired from the year 1886 until the time of his said death was the result of the joint efforts of plaintiff and the said Ben Duncan in reliance upon, on the part of plaintiff, the execution of said promise of marriage, and thereby said marriage, when actually consummated, reverted to and was as of the date of 1886; * * * that at the time of the death of the said Ben. Duncan he was in possession and control of a large estate, which was the community property of the said Ben Duncan and plaintiff, the same having been accumulated during the period of time that he and plaintiff lived together as man and wife; that immediately upon his said death the defendant Johnson, and before having produced or filed said will for probate, actually seized and took possession of a great portion of the personal estate, one-half of which belonged to plaintiff, excluded plaintiff therefrom, and used plaintiff's said portion of said estate as his own, claiming the same under pretense of right as independent executor of the estate of Ben Duncan, deceased, and has ever since withheld from plaintiff and used as his own, against plaintiff's will and without her consent, her entire interest in said estate, both personal and real, and all the defendants refuse to admit plaintiff's claim to and title in any interest to said property or any portion thereof."

As against a general demurrer the petition was sufficient to show that Ben Duncan, deceased, and appellee were man and wife, and that the property was acquired during the existence of the marital relation. The assignments are overruled.

[2] The third assignment of error assails the definition of a common-law marriage, because it did not state that the parties must hold themselves out to the public as man and wife. The court stated in his definition:

"A common-law marriage is constituted where the parties mutually agree and consent together to become husband and wife, and thereafter carry out that agreement and live and cohabit together openly and professedly as husband and wife."

The definition was sufficient and was equivalent to a statement that the parties

---

held themselves out publicly as man and wife. "Openly and professedly" would be sufficient. As said in Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011:

"The cohabitation must be professedly as husband and wife, and public, so that by their conduct towards each other they may be known as husband and wife."

One of the definitions given by Webster of "publicly" is "openly." The third assignment of error is overruled.

The court gave a satisfactory definition of a common-law marriage, and properly refused the special definition requested by appellants. The fourth and fifth assignments are overruled.

[3, 4] The language used by counsel for appellee was justified by facts in the case. Courts cannot so curtail arguments of counsel that they cannot present the claims of clients to a jury. If, however, the argument was improper, it was withdrawn by counsel, and the jury instructed not to consider it. A charge withdrawing consideration of the argument from the jury was prepared by appellants and given by the court. We fail to see how an argument based on what would result to a poor Mexican woman if a certain verdict was rendered, would so inflame a Texas jury against American defendants as to shape their verdict in her favor. There is not a Mexican name among the jurymen who signed the verdict. The jury knew from the pleadings, if their common sense did not inform them, that if appellee was married to Ben Duncan, deceased, she was entitled to one-half of the community property accumulated during the existence of the marriage relation, and they knew that the children would not be entitled to any of the property if they were bastards. The jury must be credited with some common sense and knowledge. The pleadings gave them all the information they received from the argument. All of the argument, however, was withdrawn from consideration by a charge prepared by appellants and given by the court. The argument was based on the facts. The sixth, seventh, and eighth assignments of error are overruled.

The evidence was uncontroverted that the contract of marriage was entered into in the latter part of 1898 or the early part of 1899, and the court had the authority to assume that the contract had its inception at that time, if at all. No objection was made to the use of the word "consummated" instead of "contracted," but appellants assume that the court intended "contract." The ninth and tenth assignments of error are overruled.

[5] Through the eleventh assignment of error appellants complain of a refusal to give a certain special charge as to community property. The charge was incorrect as attempting to fix the time as to when the law went into effect which makes the income from separate property a part of the separate estate of either spouse. The date named was some indefinite time in 1913 when the law went into effect (Acts 33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624]). That amendment to article 4621 which defines separate property and fixes the status of married women as to their separate property was enacted on April 4, 1917 (Acts 35th Leg. c. 194 [Vernon's Ann. Civ. St. Supp. 1918, art. 4621]). Prior to that time the rents and revenues derived from separate property were not included in the separate estate. The court correctly refused the charge, and no complaint is made through an assignment of error that a correct charge on the subject was not given by the court.

[6] In article 4622 it provided:

"That any funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and, unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such accounts."

That law was passed in 1913, and it is contended by appellants that money deposited by Ben Duncan, deceased, in his name, would, upon the dissolution of the marriage relation by death, not be a part of the community estate. If that contention were sustained, it would be necessary to hold that that part of the act of 1913 repealed article 4623, which embodies a law which has been in existence since 1840, in so far as bank deposits are concerned. That law is as follows:

"All the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

Primarily the object of the law of 1913 was for the protection of married women, and incidentally married men, in preventing one spouse from withdrawing funds deposited by the other in banks. That it was intended to raise a presumption that would protect one spouse from the checks or drafts of the other on bank deposits is clearly indicated by the requirement that the bank where the deposit is made shall not honor checks and orders; unless otherwise ordered, of any but the spouse who made the deposit. It creates a presumption as to deposits between the parties while the marriage relation continues to protect bank deposits of either husband or wife from withdrawals by the other. It purports to fix the status of bank deposits before death or divorce, and not after, and does not mention a repeal of

any other provision as to presumptions that arise on the dissolution of the marriage relation. The presumption as to the status of property possessed by husband or wife at the time the marriage may be dissolved remains unchanged. That status has been fixed by a law older than the existence of Texas as a state, and has been woven into the warp and woof of property rights by hundreds of judicial decisions. It has been too intimately attached to all property rights in Texas to countenance a repeal of it by a law in which it is not mentioned, and the object of which was clearly not to repeal it. If the law be as contended by appellants, instead of being a shield and protection to the married woman, in a large majority of cases it would devolve upon her, at the death of her husband or dissolution of marriage by divorce, the burden of showing that the bank deposits of her husband were community funds; for in a large majority of cases bank funds are held in the name of the husband. We are not disposed to assume that the Legislature desired to put any such burden on the married woman. The act of 1913 not evidencing any intention to repeal any part of article 4623, we hold that it did not repeal any part of that article. Veltman v. Slator (Tex.) 217 S. W. 378. The caption of the act which added the provision as to bank deposits, purporting to amend articles 4621, 4622, and 4624, and to repeal article 4625, does not mention article 4623, clearly showing that there was no intention to amend or repeal that article or any part of it. There is no repealing clause in the body of the act of 1913, although it is stated in the caption that it was intended to repeal article 4625 and all other laws and parts of laws in conflict therewith. The emergency clause shows that it was intended as a protection to married women, which would not be accomplished if the construction placed on it by appellants were to prevail after the death of Ben Duncan, if he was married at the time of his decease, that the $40,050.58 on deposit in the Moore National Bank of Moore, Tex., in his name was not community property.

[7, 8] At the death of Ben Duncan, all of his property, real and personal, being presumed to be community estate, the burden was upon appellants to satisfactorily prove that it was his separate estate. Appellants failed completely to remove the presumption and there was evidence tending to prove that portions of it at least were acquired during the existence of the marital relation. Nineteen hundred and forty-nine acres of land and fourteen town lots were purchased by Ben Duncan between 1898 and the time of his death, and all the brick buildings were erected subsequent to 1900, and there were a large number of notes and bonds and cattle acquired after 1898. Ben Duncan executed a will in which he made disposi-

tion of his property, the larger portion of it to persons described as "children of myself and my first wife," which is a significant circumstance in view of the fact, if he had more than one wife, the second was appellee. One-half of the property acquired since 1898 by Ben Duncan was decreed to appellee, and as to that property the evidence was sufficient to sustain the judgment. There was no testimony that tended to remove the presumption that the property was community. Appellants state that, "where there is evidence to show that some of the property adjudged as community property may have been the separate property of Ben Duncan, Sr., deceased," the matter should have been submitted, as to the community property, to the jury as requested by appellants, but it is not germane to the second twelfth assignment, which is a complaint against the testimony. It may be said that proof showing that it "may have been" separate estate does not meet the provision which fastens the presumption of community estate "unless the contrary be satisfactorily proved." The second, twelfth, thirteenth, fourteenth, and fifteenth assignments of error are overruled.

[9] The facts of this case show that in 1886, when appellee was a girl 12 or 13 years of age, and Ben Duncan a man of about 50 years of age, he, over the protest and resistance of her mother, took her away from her mother, telling the latter that "he would keep Levy as long as she lived or as long as he lived." His first wife, also by a common-law marriage, had been dead for 2 years at the time of the abduction of the child. Ben Duncan at once entered into illicit relations with the girl, and she bore him six children and lived with him until November, 1898, when he was convicted of fornication with appellee and fined. A short while afterwards he sent for appellee and entered into a solemn agreement with her to live as man and wife. The evidence showed that she was his loving companion through all the years, caring for his household, and remaining true to him in all respects. The children addressed Duncan as "Pa" and appellee as "Mamma." They lived and cohabited with each other, and he treated her as men usually treat their wives. They were reputed to be man and wife, and she was the mistress of his household. Some of the appellants at times lived with them. When death was approaching, he motioned to appellee to approach, and they kissed each other, as the last act of their long association with each other. He referred to appellee as his wife, and openly acknowledged her as such. The evidence was sufficient to justify a finding by the jury that a common-law marriage existed. The law favors marriage and prefers to find, whenever the evidence will permit, the existence of marriage rather than an illicit relation.

The judgment is affirmed.