ARNOLD *v.* ARNOLD.

1. MARRIAGE—COMMON-LAW MARRIAGE.

   In order to constitute common-law marriage, it is necessary that the parties thereto agree presently to take each other as husband and wife, and that they continue to cohabit together in that relation.

2. SAME—RESUMPTION OF MARITAL RELATION AFTER DIVORCE.

   Where husband and wife of Catholic faith were divorced, and thereafter, under apparent belief that because of rules of church there was no severance of marriage relation, resumed marital relations without agreeing presently to take each other as husband and wife, there was no common-law marriage between them.

As to sufficiency of words and conduct to constitute common-law marriage, or circumstantial evidence to imply marriage, see annotation in L. R. A. 1915E, 60.

Appeal from Berrien; White (Charles E.), J. Submitted April 23, 1931. (Docket No. 167, Calendar No. 35,569.) Decided October 5, 1931.

Petition in probate court by Alice Arnold against Robert L. Arnold, administrator of the estate of Julius C. Arnold, deceased, to be declared widow and heir at law of said deceased. From denial of petition, plaintiff appealed to circuit court. Directed verdict and judgment for defendant. Affirmed.

*Charles W. Gore,* for plaintiff.

*Edwin J. Donahue,* for defendant.

SHARPE, J. The plaintiff and Julius C. Arnold, now deceased, were married on September 12, 1917, at the city of Niles, in this State, by a priest of the Roman Catholic church. They were divorced on April 23, 1924, on a bill therefor filed by plaintiff. Mr. Arnold died on October 1, 1929. It is the claim of the plaintiff that after the divorce was granted there was a common-law marriage between her and the deceased, and that as his widow she is entitled to certain of the property owned by him at the time of his death.

It is undisputed that soon after the divorce was granted the plaintiff returned to her former home and occupied the same room with her former husband. Her son by a former marriage testified that the deceased said to him: "Floyd, your mother should be home with me where she belongs and we will be married." His wife testified that the deceased in her presence said "he wanted her 'home with him. He said they were both getting old and needed to be together and says, 'Once married,

always married,' in the Catholic faith; said he was a Catholic and that was all.'' Another son of plaintiff testified that deceased said to him, ''The place for your mother is at home with me;'' said ''She is my wife and there is her place, to home with me.'' There is also testimony that after she came back to live with him he called her ''mother'' and introduced her to people as his wife, and that he often made the remark ''once married, always married.''

Robert Arnold, a son of the deceased by a former wife, as a witness for defendant, testified:

''I was raised in the Catholic faith and understand the teachings of the Catholic church with reference to marriage. It is a rule of the Catholic church that divorces are not recognized; therefore, it is our belief that once married they continue to do so until the death of one party.''

And on cross-examination he said:

''It is a fact that the Catholic church recognizes annulment and after a marriage has been annulled by the Catholic church there is no longer a marriage, but they have to be under some different circumstances. They don't recognize divorce, but they do recognize annulment. They do not recognize divorce, and consider the parties married until death. I mean that the Catholic church as a fundamental principle does not believe that a divorce legally granted in this court is legal according to the Catholic faith. According to the religious belief Mrs. Arnold is still my father's wife and widow according to the Catholic faith.''

The plaintiff, when called as an adverse witness, testified:

''I am the plaintiff in this case. I testified at a hearing on this matter in the probate court before

Judge Andrews. I don't remember whether you asked me at that hearing if there was anything said by me to Mr. Arnold or Mr. Arnold to me, after the divorce about living together as husband and wife. I said that there was never anything said by Mr. Arnold to me or me to Mr. Arnold relative to our resuming the marriage relation except Mr. Arnold said to me in Benton Harbor the evening he came to see me, 'Mother, come home where you belong.' I don't remember that I said that he said with a Catholic, once married always married, but he made the remark to me, 'once married, always married.' I don't remember how I answered the question relative to living together as husband and wife."

M. F. Brickel, who purchased some real estate from the deceased, testified that when the deed was prepared he asked him if he was married and he said not; that the question was prompted by his knowledge of the divorce and that deceased and the plaintiff were then living together. The deed described him as "unmarried."

J. F. Wilkinson, who conducts an abstract business, testified that he drew deeds for the deceased in 1926, 1927, and 1929, and in all of them he described himself as an unmarried man.

After a consideration of the evidence, the trial court held that there was no common-law marriage between the parties, and directed a verdict for the defendant, on which judgment was entered. In our opinion he was clearly right in doing so. In *Walsh v. Ferguson,* 249 Mich. 539, 541, Mr. Justice POTTER, speaking for the court, said:

"In order to constitute a common-law marriage, it is necessary that the parties thereto agree presently to take each other as husband and wife, and that they continue to cohabit together thereafter in that relation."

This rule of determination has been strictly adhered to since the early case of *Hutchins* v. *Kimmell,* 31 Mich. 126 (18 Am. Rep. 164).

It is apparent that the deceased did not, under the laws of the church to which he belonged, consider the divorce as a severance of their marriage relation, and that this was also the understanding of the plaintiff clearly appears from her own testimony.

The judgment is affirmed.

WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred with SHARPE, J. BUTZEL, C. J., concurred in the result.