**McCHESNEY et al. v. JOHNSON et al.**
**No. 13083.**

Court of Civil Appeals of Texas. Fort Worth.
Dec. 24, 1934.

Rehearing Denied Feb. 1, 1935.

Bryan-Stone-Wade & Agerton and Oliver W. Fannin, all of Fort Worth, for appellants.

C. C. Peters, Jr., and S. A. Crowley, all of Fort Worth, for appellees.

LATTIMORE, Justice.

This appeal involves a mortgage on a homestead claimed by virtue of a common-law marriage. The mortgage, dated in June, 1927, recited Johnson to be a single man. This debt was reduced to judgment and appellant loaned Johnson money to satisfy that judgment and taxes and took a deed of trust in April, 1931, which also recited Johnson to be a single man.

■ Appellees, who are negroes, filed this suit to remove cloud from title, alleging themselves to be husband and wife by virtue of a common-law marriage contracted in the fall of 1926 in Fort Worth and that the mortgaged property has been their homestead at all times since then. Their testimony, though of a vague nature, makes a prima facie case. Most of their witnesses' corroboration of holding out to the public as married was shown to be uncertain as to whether it was prior to the mortgage of 1927. or afterward. The wife was barely turned sixteen years old in the fall of 1926. She continued attendance at public school under her maiden name of Brown until 1928. A child was born to her a year later at her mother's home and the mother told the attending physician the girl's name was Brown; a negro named Lewis admitted his responsibility for the paternity thereof. The child was registered in the birth records as Brown. One white witness, as to the holding out to the public in 1926, testified on motion for new trial that he was mistaken and a juror offered to testify that the testimony of this witness was responsible for his concurrence in the verdict finding on common-law marriage.

We must reverse the judgment and remand this case to the trial court. The tremendous preponderance of evidence is too strongly against the verdict for us to believe that that verdict was not the result of prejudice.

■ The validity of a common-law marriage is well established in our law. It took root there when the conditions in Texas justified it. The sparse settlements, the long distance to places of record, bad roads, difficulties of travel, made access to officers or ministers difficult for some of our residents, lack of general education in the English language produced unfamiliarity with the laws, and, in the small settlements it was more difficult to dignify an illicit association with the name of marriage than in one of our large cities where all of us are strangers to the private life of most of its residents. We do not say that all the reasons for upholding common-law marriages have disappeared. We do say that the courts should review with care a common-law marriage claimed to have been contracted in the shadow of the county clerk's office and within the sound of church bells. If the conduct of such contracting parties does not show clearly an honorable abiding by such agreement before the eyes of their world of associates and contacts, then it should not receive judicial sanction. The agreement is fundamental and cohabitation is an element, but the holding out to the public as being man and wife is the acid test. Marriage is more than a contract. It is a status so held because homes are the foundation of democratic government, and are so directly its source of sustenance that each home has an interest in each and every other one. Stability and permanence are vital to the good offices of that status and must

**660**

be insisted upon, particularly when dealing with this institution called common-law marriage. Consistency is ever a jewel, but it nowhere shines more brightly than when it adorns the breast of those who undertake to prove by their daily life that they are fulfilling the solemnly taken vows of man and wife. A common-law marriage is not a product of a relation which says, "We are husband and wife today and will be again next week, but since it suits our convenience we will deny that relation in the interim."

■ We also sustain assignment of error No. 7. Gordon's judgment was not conclusive of the recitals therein as to Johnson being a single man then, but Johnson was cited to appear and defend and did not assert any homestead claim. He was just as much married then as he *is* now. The evidence was a circumstance.

■ To the extent of money advanced by appellant at the request of Johnson in the payment of the taxes, and for which a valid lien existed and for which Johnson agreed that appellant could have a lien, appellant is entitled by equity to have his lien foreclosed whether the property be a homestead or not.

The judgment of the trial court is reversed and the cause is remanded.