**B. W. GARY and Bettie Gary, Appellants,**

**v.**

**Wanda Cegale GARY, Appellee.**

**No. 672.**

Court of Civil Appeals of Texas, Tyler.

Feb. 8, 1973.

Rehearing Denied March 1, 1973.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Douglas Weitzel, Earl Sharp, Longview, for appellee.

DUNAGAN, Chief Justice.

This suit was brought by B. W. and Bettie Gary against Texas Employers Insurance Association for workmen's compensation benefits arising out of the death of their son, Charles Edward Gary. Wanda Cegale Gary and Eva Sparks Gary both filed suits of their own against the insurance carrier, each claiming to be the common-law wife of Charles Edward Gary and therefore entitled to the insurance death benefits. The three suits were consolidated by the District Court by order dated July 6, 1971.

On September 27, 1971, Eva Sparks Gary was dismissed from the consolidated action by summary judgment, it appearing that she was party to a prior valid marriage at the time she claimed to have entered into a common-law marriage with Charles Edward Gary.

The compensation carrier admitted liability and paid $15,891.37 into court to be distributed to whoever was lawfully entitled thereto. The case proceeded between Wanda Cegale Gary and B. W. and Bettie Gary to a trial on the merits. The cause was submitted to the jury on a single issue, and on a verdict in favor of Wanda Cegale Gary judgment was entered awarding the insurance proceeds to Wanda Cegale Gary less the sum of $250.00 awarded to the insurance company as attorney's fee. Appellants' motions for judgment non obstante veredicto and new trial were each overruled. B. W. and Bettie Gary have perfected this appeal from only that portion of the judgment in favor of Wanda Cegale Gary.

The evidence adduced at trial showed that appellee was married to her first husband, William P. Williams, in July, 1940, that he was the father of her only children, and that she divorced him in 1956. Appellee's second husband was Billy J. Hall, whom she married and divorced twice between 1956 and 1960.

After her second divorce from Mr. Hall, appellee married Charles Edward Gary on April 20, 1960. She obtained a divorce from him in Gregg County in 1961. The two were married again in 1962 and appellee obtained a second divorce from Charles Edward Gary in late 1962. Appellee, then, had entered and obtained dissolutions of five ceremonial marriages before the claimed common-law marriage in the present case.

Between 1963, the time urged as the initiation of the common-law marriage, and 1969, the time of Charles Gary's death, the couple lived together for a while in Dallas and later in Ada, Oklahoma, and then they went to Longview and Lafayette. Charles Gary then left to work on the West Coast. After returning to Longview, for a short time Charles Gary went to work on a job in Alaska. Wanda and Charles were not living together at the time of his death on November 24, 1970, and had not consistently cohabited for at least a year prior to his death. Testimony revealed that it was not until after November 24, 1970, the time of Charles' death, that appellee began to refer to herself as Wanda Cegale Gary. Appellee entered into a sixth ceremonial marriage after the death of Charles Edward Gary and has obtained a divorce from that marriage.

Appellants by their first two points of error contend that (1) the finding of the jury [1] and judgment are not supported by

1. The jury was asked in a single special issue: "Do you find from a preponderance of the evidence that the Plaintiff (Wanda Cegale Gary) was the common-law wife of Charles Edward Gary at the time of his death." The jury answered, "She was his wife."
Further instruction informed the jury that "In connection with the foregoing question you are instructed that the ele-

any evidence of probative force or (2) the verdict and judgment are not supported by sufficient evidence of probative force and are against the great weight and preponderance of the credible evidence.

When the assignment is that there is no evidence, the reviewing court may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957). When the contention is made that the evidence is factually insufficient to support the jury findings, or the findings are against the great weight and preponderance of the evidence, a court of civil appeals must examine all of the evidence and reverse and remand for a new trial if it concludes that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

There are three essential elements of a common-law marriage: (1) an agreement presently to become man and wife; (2) a living together pursuant to the agreement and cohabitation as husband and wife; and (3) a holding-out of each other to the public as husband and wife. Humphreys v. Humphreys, 364 S.W.2d 177 (Tex.Sup., 1963); Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955); Winters v. Duncan, 220 S.W. 219 (Tex.Civ.App., San Antonio, 1920, writ ref.); Drummond v. Benson, 133 S.W.2d 154 (Tex.Civ.App., San Antonio, 1939, writ ref.); 38 Tex. Jur.2d, Marriage, secs. 15 and 38.

Each of the elements is necessary, and it is particularly essential that the parties mutually agree that they would then and

thenceforth be husband and wife and that the following cohabitation be on the faith of this mutual agreement and promise. Timmons v. Timmons, 222 S.W.2d 339 (Tex.Civ.App., Galveston, 1949, n. w. h.); DeShazo v. Christian, 191 S.W.2d 495 (Tex.Civ.App., Amarillo, 1945, writ ref., n. r. e.); and Butler v. Butler, 296 S.W.2d 635 (Tex.Civ.App., Ft. Worth, 1956, n. w. h.).

As to the first element, an agreement presently to become man and wife, appellee does not argue that she and the deceased, Charles Edward Gary, had an express agreement to enter into a marriage. Appellee urges that the evidence supports the finding of an implied agreement, however. It is settled that the agreement may be implied or inferred from cohabitation *and* a holding-out as husband and wife. McIlveen v. McIlveen, 332 S.W.2d 113 (Tex.Civ.App., Houston, 1960, no writ); Shelton v. Belknap, supra; Rosales v. Rosales, 377 S.W.2d 661 (Tex.Civ.App., Corpus Christi, 1964, no writ). We have found no case, nor have we been directed to any, which allowed the inference of an agreement to be made solely on the basis of proven cohabitation. See 1 Speer's Marital Rights in Texas, sec. 39 (and 1973 Supplement). Agreement is fundamental and cohabitation is only one element of common-law marriage, which will not suffice in itself. Associated Indemnity Corporation v. Billberg, 172 S.W.2d 157 (Tex.Civ. App., Amarillo, 1943, n. w. h.). Present consent and agreement to be married is the gist of common-law marriage, and it is not sufficient to agree on present cohabitation and future marriage. Cuneo v. DeCuneo, 24 Tex.Civ.App. 436, 59 S.W. 284 (1900). The agreement necessary for a common-law marriage must be specific from both sides. Welch v. State, 151 Tex.Cr.R. 356, 207 S.W.2d 627 (1948).

ments of a common-law marriage are: (1.) An agreement to be husband and wife; (2.) living together as husband and wife; (3.) holding each other out to the public as such. It is not essential that an

expressed agreement be shown by direct evidence. A contract of marriage may be inferred or implied from evidence which establishes the second and third elements of the marriage."

As to the sufficiency of the evidence, then, we are faced first with examining evidence of the cohabitation and holding-out elements, and secondly, whether or not that evidence permits an inference of agreement from those two elements.

The evidence showed that Wanda Cegale Gary (hereafter "appellee") always used her name from her first marriage (Williams) in her business dealings between 1963 and 1969, though she had been married to the deceased twice since that first marriage. She kept her bank accounts in the name of Williams; any pay checks turned over to her by Charles were deposited in her bank account in the name of Williams; credit purchases were made in the name of Williams; the savings accounts of appellee were in the name of Williams; she filed Federal Income Tax Returns in the years 1963–1969 as a single person using the name of Williams; appellee executed secured transactions in the name of Williams; her social security account was in the name of Williams and her employers during this period knew her by that name; neither at her deposition nor at trial did appellee have anything in her purse or on her person to identify her as Wanda *Gary*; her driver's licenses were in the name of Williams from 1963 through the time of trial; she used the name "Cegale Williams" on an application for a marriage license in 1971, about four months after Charles Gary's death; between 1963 and 1969 appellee rented several apartments—always in the name of Williams; her listing in the telephone directories was always in the name of Williams; and at the funeral of Charles Edward Gary appellee signed her name as "Cegale Williams" under the section of the visitor's book reserved for "Friends" rather than the section for "Relatives."

Appellee made an effort to negative the weight to be given these facts by explaining that Charles Gary's credit rating was such that she could not use his name for fear of being precluded from making credit purchases. There was also testimony to the effect that occasionally Gary would introduce appellee as his wife during this period. However, testimony was elicited from the appellee that she and Charles Gary "were together quite a bit between the two marriages." She also testified that between these two marriages Charles introduced her as his wife but she did not consider herself married to him until after they had taken their marriage vows before a Justice of the Peace in Overton, Texas. Since appellee had twice been his wife by ceremonial marriage, and since neither Gary nor appellee were sure their second divorce in 1962 was valid, the occasional use of the term "wife" is of no probative value. Finally, it was brought out that one doctor's bill between 1963 and 1969 for treatment received by appellee was sent to the house where appellee and Charles Gary were living addressed to either Mr. or Mrs. Charles Gary—the evidence was unclear as to which. There is no testimony that the doctor was ever aware that Wanda and Charles had been divorced.

█ Testimony at trial showed that the 1962 divorce obtained by appellee presented some problems. Appellee was not sure that the divorce was valid. It appears that Charles Gary shared her doubts. The appellee testified she and Charles Gary were not sure that the second divorce was valid because they had not lived in Dallas County six months at the time; that they decided to go back together and by reason of the doubt of the validity of the divorce they did not think it was necessary to go through another marriage ceremony. This testimony could mean only that they did not have another marriage ceremony when they went back together because they had some feeling that they were still married and another ceremony was unnecessary since it would be a continuation of their second marriage. Also appellee's witness, Sharon Ford, testified that she knew Charles and Wanda were living together but did not know about their second divorce in 1962, and did not know or understand that they were divorced at the time,

since she was told by Charles that the divorce had not gone through. Even if they had an agreement to go back together, the fact that they did not go through another marriage ceremony because they did not think it necessary due to their uncertainty of the validity of their second divorce clearly shows that such agreement did not include the further agreement to become again husband and wife. The most that could be inferred from the evidence, as to any agreement, is they just decided to go back together and continue to live together in the same manner as they had before.

The direct testimony was to the effect that the appellee was acting under a disbelief that the second marriage was in truth and in fact severed by the second divorce and was the basis upon which she resumed marital relations as husband and wife without another marriage ceremony. There must be a meeting of the minds or there is no contract. There was none in this case—hence no marriage. Clack v. Williams, 189 S.W.2d 503 (Tex.Civ.App., San Antonio, 1945, writ ref. w. m.). We find no evidence in the record that when the parties again started living together they made a new agreement to become husband and wife, or, as a matter of fact, made any agreement. Appellee testified that they "just went back together." An inference of an implied agreement cannot be drawn under the evidence in this case because the direct testimony of the appellee negatives such an agreement as a matter of law. Arnold v. Arnold, 255 Mich. 248, 238 N.W. 209 (1931) and Reppert v. Reppert, 214 Iowa 17, 241 N.W. 487 (1932); Manire v. Burt, 121 S.W.2d 630 (Tex.Civ. App., Austin, 1938, writ ref.); Clack v. Williams, supra. Neither can such agreement be inferred where the facts demonstrate that no marriage agreement was entered into. Speer's Marital Rights in Texas, Vol. 1, sec. 38. "The evidence must clearly show such marriage." Walter v. Walter, 433 S.W.2d 183, 195 (Tex.Civ. App., Houston (1st Dist.), 1968, writ ref., n. r. e.). Several of appellee's close rela-

tives did not even know about the divorce for some time after it was obtained. It seems significant that when these relatives were told about the divorce, neither Wanda nor Charles made any protestations that they considered themselves—or intended to presently be—married. These facts and circumstances negative a holding-out of a new and different marriage in 1963.

We do not believe that appellee's explanation as to why she used a former name for credit probative of a holding-out. Certainly one cannot hold oneself out to be the spouse of another by deliberately using a name other than that of the spouse. The occasional use of the reference "wife" or "husband" cannot support a finding of a holding-out, especially in the circumstances where the couple were not sure they were divorced from a previous marriage and had been twice married before. Ex Parte Threet, 160 Tex. 482, 333 S.W.2d 361 (1960). Appellee testified that the alleged agreement took place in 1963 (though her testimony as to the exact date and place is unsure) within a year after the divorce. It appears, however, that no one was told of the divorce until some time later. This is calculated to have left the public believing that the marriage dissolved in 1962 was still effective. Since all three of the required elements must be present together, it is inconsistent to the notion of holding-out that any new marriage was kept secret. Ex Parte Threet, supra. An agreement cannot be inferred in light of direct evidence to the contrary (the secrecy and doubt surrounding the 1962 divorce, and the failure to hold-out to the public a *new* and *separate* marital arrangement). Rush v. Travelers Insurance Company, 347 S. W.2d 758 (Tex.Civ.App., Texarkana, 1961, no writ); Walter v. Walter, 433 S.W.2d 183 (Tex.Civ.App., Houston (1st Dist.) 1968, writ ref., n. r. e.); Ex Parte Threet, supra.

We have concluded there is no legal and competent evidence to establish as a fact that there was an agreement between the parties to enter into a common-law mar-

riage. The legal and competent evidence is to the contrary. Therefore, in our opinion the trial court erred in overruling appellants' motion for judgment non obstante veredicto. We sustain appellants' first point of error. Rush v. Travelers Insurance Company, supra. Since all authorities make it clear that all three elements must be present at the same time to support a finding of common-law marriage, the absence of one defeats the party claiming the existence of the marriage. Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124 (1913); Moore v. Jordan, 328 S.W.2d 343 (Tex. Civ.App., Houston, 1959, writ ref., n. r. e.). There being no probative evidence to support a necessary element of the finding of the jury, the judgment of the trial court is reversed and judgment is rendered for the appellants.

We quote approvingly from McChesney v. Johnson, 79 S.W.2d 658 (Tex.Civ.App., Ft. Worth, 1934, n. w. h.):

> " * * * We do say that the courts should review with care a common-law marriage claimed to have been contracted in the shadow of the county clerk's office and within the sound of church bells. * * * Consistency is ever a jewel, but it nowhere shines more brightly than when it adorns the breast of those who undertake to prove by their daily life that they are fulfilling the solemnly taken vows of man and wife. * * * "

The court further stated: "If the conduct of such contracting parties does not show clearly an honorable abiding by such agreement before the eyes of their world of associates and contacts, then it should not receive judicial sanction."

We have not discussed appellants' second point relating to the insufficiency of the probative evidence to support the jury's finding and judgment and that such evidence was against the great weight and preponderance of the credible evidence. If this point should be reached, we would hold that the evidence is insufficient to support such a finding and that the jury's finding is contrary to the overwhelming preponderance of the credible evidence.

In view of our disposition of appellants' first two points of error, it becomes unnecessary for us to consider the remaining points and we do not do so.

The trial court's judgment in favor of the appellee, Wanda Cegale Gary, is reversed and judgment is rendered for the appellants.

Reversed and rendered.