NO. 07-03-0047-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



AUGUST 12, 2005



______________________________




WILLIE A. MILTON, APPELLANT



v.



JANIE COCKRELL, DIRECTOR, APPELLEE




_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 32,780; HON. LEE WATERS, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD. S.J. (1)

MEMORANDUM OPINION


 In this proceeding, appellant Willie A. Milton appeals the dismissal, pursuant to
Texas Civil Practice and Remedies Code section 14.003, of an application filed by him in
the trial court. We affirm the trial court's dismissal.

 This matter arises from a document filed by appellant in the trial court which he
characterized as a "Letter Form [sic] Application for Writ of Habeas Corpus." In that
instrument, he contends that Janie Cockrell, as Director of the Institutional Division of the
Texas Department of Criminal Justice, was violating his constitutional rights by not mailing
95 letters to various district clerks throughout Texas and, specifically, by failing to mail one
letter to the Gray County District Clerk. In dismissing appellant's proceeding, the trial court
found that appellant's claims had no arguable basis in law or in fact and that appellant's
chances of ultimate success were slight. See Tex. Civ. Prac. & Rem. Code Ann. §14.003
(Vernon 2002). 

 In his appeal, appellant, acting pro se, contends the trial court 1) abused its
discretion in finding that his claims had no basis in law or in fact and, realistically, had no
more than a slight chance of ultimate success, 2) abused its discretion in construing
appellant's claims as inmate litigation subject to Chapter 14 of the Civil Practice and
Remedies Code (the Code), rather than an application for habeas corpus, and 3) lacked
jurisdiction to dismiss his claims if they were subject to Chapter 14 because such claims
are governed by the mandatory venue provision contained in section 15.018 of the Code. (2) 
 We will address appellant's issues in a logical, rather than a sequential, order.

Application for Writ of Habeas Corpus

 In discussing this appeal, it is logical to begin with a determination of the nature of
the claim asserted by appellant. Although appellant titled his petition as an application for
writ of habeas corpus, to determine its true nature, we must look to the substance of the
filing and the relief requested. See Finley v. J.C. Pace Ltd., 4 S.W.3d 319, 320 (Tex. App.
--Houston [1st Dist.] 1999, no pet.). Under Texas law, to be entitled to habeas corpus relief,
a decision in the prisoner's favor on a dispositive issue must be one that would result in the
prisoner's immediate release. See Headrick v. State, 988 S.W.2d 226, 228 (Tex. Crim.
App. 1999); Ex parte Stewart, 71 S.W.3d 540, 541 (Tex. App.--Amarillo 2002, no pet.). 
Because appellant's application ultimately seeks use of the mail to contact government
officials and, even if successful, would not result in appellant's immediate release, we
conclude that appellant's claims do not constitute, in substance, a request for habeas relief. 
Appellant's second issue is overruled.Venue

 Having concluded that appellant's claims are controlled by Chapter 14 of the Code,
we must next determine whether the trial court had authority to dismiss his claims.
Appellant contends that if his claims are controlled by Chapter 14, the trial court could not
dismiss because, under section 17.019 of the Code, venue was improper in Gray County. 
It is the plaintiff's right to select a venue in which to file his suit and, when that venue choice
is not properly challenged through a motion to transfer venue, the propriety of his choice
is fixed in the county chosen by him. Wilson v. Texas Parks & Wildlife Dep't, 886 S.W.2d
259, 260 (Tex. 1994), overruled in part on other grounds by Golden Eagle Archery, Inc. v.
Jackson, 24 S.W.3d 362 (Tex. 2000); Rosales v. H.E. Butt Grocery Co., 905 S.W.2d 745,
747 (Tex. App.--San Antonio 1995, writ denied). That being the rule, venue became fixed
in Gray County, and the trial court had authority to decide appellant's claims. We overrule
appellant's third issue.

Order of Dismissal

 In his first issue, appellant contends the trial court erred in dismissing his claims
pursuant to section 14.003(b) of the Code. In its order dismissing appellant's claims, the
trial court expressly found that appellant had no reasonable basis in law or in fact and that
his realistic chances of ultimate success were slight. In determining whether a trial court
properly determined there was no cognizable basis for appellant's claims, we must decide
whether the types of relief and causes of action pled by appellant are indeed cognizable
under Texas law. See Spurlock v. Johnson, 94 S.W.3d 655, 658 (Tex. App.--San Antonio
2002, no pet.).

 Appellant seeks an order requiring the Director of the Institutional Division of the
Texas Department of Criminal Justice to show cause why the court should not order her
to remove any restraint upon appellant's ability to make contact with a government official. 
Appellant has not cited any authority authorizing this court or the trial court to grant the
relief requested. Further, this court is not aware of any authorization to grant the type of
relief sought by appellant. That being so, we can only conclude that the trial court did not
reversibly err in dismissing appellant's claims as having no basis in law. We overrule
appellant's first issue contention. 

 In summary, all of appellant's issues are overruled, and the trial court's dismissal is
affirmed.

 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004). 
2. We must presume that appellant meant to reference the venue provision relating
to inmate litigation contained in section 15.019. We will address this issue under that
presumption. 



ld a hearing in this case on December 22, 1999, at which FBT's
attorney conceded that no execution on the property was pending. Nevertheless, the court
heard testimony from Claudia, Sandy and Nichols. Claudia testified that she never
remarried Sandy after their divorce, that he abused cocaine and suffered psychological
problems, that he was occasionally homeless, and that she sometimes provided him with
food and work and let him sleep at her home irregularly. She denied entering into a
common law relationship. 

 Sandy testified that the statements in his August and September 1999 affidavits
were false, that he was under the influence of cocaine at the time and did not read the
August deed or affidavit before signing them. Nichols testified that he paid Sandy $11,500
of an agreed $50,000 for his interest in the 420 acres, and that Sandy did not appear to
be under the influence of drugs when he signed the deed and affidavit. At the conclusion
of the hearing the court temporarily enjoined execution on any of the property pending a
final hearing. 

 Before a final injunction hearing, Claudia nonsuited her claim against FBT. Some
months later, and after dismissal of the appeal of cause number 9691, (6) Nichols filed a
counterclaim of trespass to try title against Claudia alleging he was the owner in fee simple
of certain tracts, (7) under deeds and by adverse possession. He asserted that he was
unlawfully dispossessed of the tracts, giving the date of his ouster as January 1, 1999. (8)
The pleading also named Edwin Murray as a third party defendant, alleging that Murray
had joined Claudia in the unlawful dispossession. Alternatively, the petition alleged
Nichols was a tenant in common with Claudia and Murray in the entire 420 acres. 

 Claudia then filed a second amended petition and answer to Nichols' counterclaims. 
This pleading converted Claudia's suit for an injunction into one to quiet title. Claudia
sought to cancel the deed from Dianne Murray to Nichols, and the deed from Sandy to
Nichols, and to quiet title in the 420 acres in her. (9) The petition challenged Nichols' claim
of adverse possession, primarily on the basis that it was interrupted by the 1988
foreclosure. In further explication of her claims, Claudia stated she was not asserting any
claim to tracts owned by Nichols that adjoined the 420 acres. (10) 

 At the same time, Claudia filed a traditional motion for summary judgment. She
asserted that the deed from Sandy to Nichols should be canceled because he had no
interest to convey. As support she relied on the 1998 divorce decree, the deed to her
individually, her own testimony at the prior hearing, and that of Sandy, that they never
remarried. She asserted the deed from Dianne Murray to Nichols should be canceled
because her interest in the 420 acres was terminated by the August 1999 foreclosure and
trustee's sale to Claudia. The motion also cited the order in cause number 9691 enjoining
Nichols from interfering with Edwin Murray's use of the 420 acres. The motion addressed
Nichols' counterclaims, attaching copies of the 1988 substitute trustee's deeds by which
the liens under the 1983 deeds of trust to the Bank were foreclosed. 

 Nichols filed an amended counterclaim, reasserting his claims of adverse
possession and alleging in the alternative that he was a tenant in common with Claudia,
and seeking partition. He also responded to Claudia's motion for summary judgment,
arguing it should be denied "as regards the 100 acre tract" described in an exhibit to his
counterclaim because of Claudia's disclaimer in her second amended petition. He also
provided several affidavits in support. The first was from a surveyor named C.A. McKinley
that described a rectangular 100-acre tract in the northwest portion of the M.P. Clark
Survey. Nichols made his own affidavit reciting the deed from Talmadge Ott to Frances
and claiming it included "the entire southwest 100 acres of the northwest 300 acres" of the
Clark Survey. The affidavit stated that Nichols had moved a house onto the property
purchased from Ott and moved Ott's house to another location. It also recited the names
of persons who lived in that house at various times, including Claudia and Sandy. 

 Nichols also submitted the affidavit of his son Robert Charles Nichols, which recited
his familiarity with the land, and sought to describe the land claimed by Talmadge Ott. 
Kenneth W. Hill made an affidavit that stated he was familiar with the land, attempted to
describe the 100 acre tract conveyed to Frances Nichols with relation to the surrounding
tracts, and stated that he had lived in the house on that tract briefly in 1985. An affidavit
from Billy Mills averred that he did work, paid for by Nichols, on "Bob Nichols' wife's house
off the end of Walker Road north of Midway," and that Edwin Murray was present and, after
initially objecting to Mills' presence, later had acquiesced in Nichols' claim of ownership of
the house.

 Nichols' response also included Sandy Lightle's August 11, 1999 affidavit and
another affidavit dated June 23, 2000. In the latter affidavit Sandy stated he was not under
the influence of cocaine in August 1999 when he executed the deed to Nichols and that
he testified falsely in court, having been threatened by Claudia. The affidavit also
reasserted his claim that a common law marriage was established after their 1998 divorce
and before Claudia purchased the 420 acres, concluding: "We have had a normal marriage
since the divorce." The affidavits of Hollys Heasley and Molly Wells, who had notarized
Sandy's signatures on his August 1999 and June 2000 affidavits, also were included. 

 The trial court granted Claudia's motion for summary judgment and denied Nichols'
counterclaims by a written order signed June 27, 2002. That order described the land at
issue as the 420 acres described in the August 3, 1999 deed to Claudia. The court
cancelled and declared invalid the deeds from Sandy Lightle and Dianne Murray to
Nichols, and granted Claudia judgment against Nichols, quieting title to the 420 acres in
her. After filing a motion for new trial, Nichols timely perfected this appeal.

Issues on Appeal

 Nichols now presents three issues for our review. They are that the trial court erred
in granting summary judgment: (1) on the basis that the deed from Sandy conveyed no
title; (2) because it disregarded evidence concerning his counterclaim for 100 acres; and
(3) finding his claims were barred by res judicata. He has not challenged the judgment's
cancellation of his deed from Dianne Murray.

 The standards applicable to review of summary judgments are well established, and 
a detailed recitation of them is unnecessary. See Tex. R. Civ. P. 166a. It is sufficient to
note a movant has the burden of showing that there are no genuine issues of material fact
and that the movant is entitled to judgment as a matter of law. We take evidence favorable
to the non-movant as true, and indulge every reasonable inference in favor of the
non-movant. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

Sandy Lightle Deed

 Nichols makes two arguments in support of his first issue. He first argues that the
excerpts from the reporter's record of the December 22, 1999 hearing, which were
attached to Claudia's summary judgment motion and which reflected the testimony of
Claudia and Sandy that they did not remarry after their divorce, were not proper summary
judgment evidence because they were not accompanied by authentication by the court
reporter or other verification. Claudia correctly notes Nichols' argument raises a defect of
form and Nichols' failure to present a timely objection in the trial court waived any error. 
Tex. R. Civ. P. 166a(f); Jones v. Jones, 888 S.W.2d 849, 852 (Tex.App.--Houston [1st
Dist.] 1994, writ denied). (11) 

 Nichols also quotes Munoz v. Gulf Oil Co., 693 S.W.2d 372 (Tex. 1984), for the
proposition that "if there is no file mark on a statement of facts or any other indication it was
considered by the trial court at the time the motion for summary judgment was sustained,
it may not be considered on appeal." We do not find that holding applicable here. In
Munoz, the non-movant sought reversal based on testimony he had not presented to the
trial court in response to the motion for summary judgment. Here, the relevant portions of
the reporter's record were presented to the trial court. They were attached as an exhibit
to Claudia's motion for summary judgment and the trial court's order recites that he
considered the summary judgment evidence. Richman Trusts v. Kutner, 504 S.W.2d 539
(Tex.Civ.App.-Dallas 1973, writ ref'd n.r.e.), cited in Munoz, supports the finding that the
testimony was properly before the court here. In Richman the court refused to consider
a reporter's record that was never filed in the trial court and was not "incorporated by
reference in either the motion for summary judgment or the reply thereto." Id. at 541. 
Claudia did not merely incorporate the testimony by reference, she attached a copy of it
to her motion. 

 Nichols next argues his affidavit and those of Sandy Lightle, Kenneth Hill, Molly
Wells and Hollys Heasley establish the existence of a genuine question of fact on the
formation of a common law marriage between Sandy and Claudia after their 1998 divorce
and before she acquired the 420 acres in August 1999. Claudia responds that the
affidavits are insufficient. The issue is material because of the presumption that property
acquired by either spouse during marriage is community property. Tex. Fam. Code ann.
§ 3.03 (Vernon 1998).

 The elements of a common law, or informal, marriage are: (1) a man and woman
agreed to be married; (2) after the agreement they lived together in Texas as husband and
wife; and (3) they represented to others in the state that they were married. Tex. Fam.
Code ann. § 2.401 (Vernon 1998). In conformity with the standards applicable to summary
judgment review, we will ignore Sandy's testimony in open court that he did not remarry
Claudia. Because we conclude that the summary judgment evidence does not raise a
genuine question of fact concerning the third element, we focus only on the evidence
relevant to that issue. We first consider whether Sandy's affidavits raise a genuine question
of fact whether Sandy and Claudia represented to others in Texas that they were husband
and wife after their divorce.

 In his August 1999 and September 1999 affidavits Sandy stated: "A few days after
our divorce, we went back to living together as common law husband and wife. We lived
together, consummated the marriage, had the intent of being husband and wife, and held
out to others that we were husband and wife." In addition to the statement already noted,
Sandy's June 23, 2000 affidavit asserted, "I am the husband of Claudia M. Lightle by
common law marriage." Like the earlier affidavits, it stated that following their divorce he
and Claudia "went back to living together," and had regular sexual relations, "just as we did
before the divorce." Speaking of events following their divorce, it also stated, "After getting
out of jail, I came back home, and we lived together as husband and wife, just as we had
always done. She advised at least one witness whom I remember that 'we are husband
and wife.'" 

 Claudia also argues the affidavits are conclusory. Challenges to summary judgment
affidavits as conclusory allege a defect in substance rather than form and may be asserted
for the first time on appeal. Dailey v. Albertson's, Inc., 83 S.W.3d 222, 225 (Tex.App.--El
Paso 2002, no pet.). To avoid being conclusory, an affidavit must contain specific factual
bases, admissible in evidence and upon which conclusions are drawn. Id. An affidavit
consisting only of conclusions is not sufficient to raise an issue of fact. Id.; See Brownlee
v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Life Ins. Co. of Virginia v. Gar-Dal, Inc.,
570 S.W.2d 378, 381-82 (Tex. 1978). The statements relative to the third element in
Sandy's August 1999 and September 1999 affidavits simply paraphrase the statutory
language, stating "we held out to others that we were husband and wife." The affidavits
contain no specific factual bases for the statements; the statements are conclusory and
not sufficient to raise a genuine issue of fact on the element of representations of marriage
to others. 

 The statement in Sandy's June 2000 affidavit is barely more specific. There, Sandy
stated that Claudia advised at least one person they were married. The affidavit does not
give the name of the person, or when, where or under what circumstances the statement
was made. Perhaps we reasonably can infer that the statement was made in Texas, since
the record makes no reference to any event occurring outside our state. And perhaps we
can infer that the statement was made after the divorce and before Claudia's purchase of
the 420 acres. (12) But even if we draw from the statement all the inferences that are
reasonable, it is not sufficient to raise a genuine issue of fact as to whether Sandy and
Claudia's relationship met the third statutory element. At most, the statement reflects only
isolated references, which is not evidence of "holding out" to others that a marriage exists.
Ex parte Threet, 333 S.W.2d 361, 364 (Tex. 1960); Winfield v. Renfro, 821 S.W.2d 640,
651 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Neither of Sandy's affidavits contains
evidence sufficient to raise a genuine issue of fact on the third element of a common law
marriage. See Tex. R. Civ. P. 166a(f).

 We next examine whether any of the other affidavits offered by Nichols filled the gap
left by Sandy's affidavit. Nichols' affidavit contained only one statement relevant to this
issue, that referring to the house on the disputed property and stating: "Claudia Lightle and
Sandy Lightle live there at the present time, or at least they frequently occupy it at night." 
This statement provides support for the second element of common law marriage, that of
living together, but is not probative of the third element. The same is true for the other
affidavits. Kenneth Hill's affidavit stated he saw Claudia and Sandy going to and from the
house on the Clark Survey and they introduced themselves to him by first name only. Molly
Wells and Hollys Heasley made no statement in their affidavits concerning representations
of marriage between Sandy and Claudia. None of these affidavits provide evidence that
Sandy and Claudia represented to others that they were married. The summary judgment
record does not show the existence of a genuine question of fact on whether Claudia and
Sandy were married at the time of her purchase of the 420 acres. We overrule Nichols'
first issue.

Counterclaim on Hundred Acres

 In his second issue Nichols challenges the summary judgment for Claudia denying
his counterclaim to a 100-acre tract of the M. P. Clark Survey described in an exhibit to his
pleadings. Nichols' arguments in support primarily recite his summary judgment evidence.
As we read his arguments, his position is that (1) Claudia is bound by the admission in her
pleadings disclaiming any interest in Nichols' adjacent land, (2) she failed to establish that
the 420 acres encompasses the 100-acre tract claimed by Nichols, and (3) he established
his title to the 100-acre tract by tracing his title to Talmadge Ott.

 Nichols' first argument makes too much of the language contained in Claudia's
second amended petition, (13) by which she disclaimed the 100 acres "that lies outside the
boundaries of the 420 acres." We do not agree that it constitutes an admission contrary
to her claim to quiet title to the described 420 acres. 

 Nor can we agree with Nichols' arguments that summary judgment was improper
because Claudia failed to present evidence showing whether the 420 acres included any
part of the 100 acres he described and claimed. Such proof was irrelevant to her ability
to establish conclusively her cause of action to cancel the deed from Sandy Lightle and
quiet title to the 420 acres as against Nichols' claims. The summary judgment evidence
established that Claudia acquired title to the land described in the October 13, 1993 deed
to the Murrays, by an August 3, 1999 deed from the substitute trustee to her. Her
summary judgment evidence also established that the deed from Sandy Lightle on August
11, 1999, conveyed no title. 

 With respect to Nichols' third argument, as noted, among the grounds set forth in
Claudia's motion for summary judgment was the 1988 foreclosure of Nichols' interest in
the 420 acres. Nichols' discussion of the summary judgment evidence tracing his interest
in the 100-acre tract omits any mention of his 1983 mortgage and the 1988 foreclosure of
that mortgage. Nor has he presented any challenge to the subsequent 1993 sale to the
Murrays, or the foreclosure and sale to Claudia in August 1999. Moreover, neither at trial
nor before this court has Nichols contested the proposition that the 420 acres conveyed
to Claudia was the same property subject to the 1988 foreclosure of his interest. He does
not contend that the summary judgment evidence raises an issue of fact concerning that
proposition. (14) To any degree the 100-acre tract made the basis of Nichols' counterclaim
in this litigation overlaps with the 420 acres, (15) that part of the 100-acre tract must be
regarded as properly subject to the trial court's judgment. The trial court did not err in
granting judgment on this summary judgment record quieting title to the 420 acres in
Claudia as against the claims asserted by Nichols. His second issue is overruled.

Conclusion

 Our disposition of appellant Nichols' first two issues makes review of his third issue
unnecessary. The trial court's judgment is affirmed.


 James T. Campbell

 Justice
1. The actual acreage at issue comprises 419.283 acres. For convenience, we use
the phrase "the 420 acres" to refer to the property described in the August 3, 1999
substitute trustee's deed to appellee Claudia Mercer Lightle. 
2. There is no suggestion in the record for whose benefit, or on what terms, Frances
Nichols was acting as trustee. She is not a party to this litigation, individually or as trustee.
The record does not address her absence.
3. The judgment entered by the trial court in the cause now on appeal clearly is
grounded, though, on the conclusion that the 420 acres at issue here is the same property
on which the Bank later foreclosed. As is discussed later in this opinion, Nichols has not
contested that conclusion. 
4. Claudia's brief states that cause numbers 9691 and 9809 were consolidated but
does not state when or refer to an order consolidating the cases. The August 2, 1999
judgment in cause number 9691 did make reference to Nichols as defendant and cross-plaintiff, and to Claudia as cross-defendant. It awarded damages against Nichols both to
Murray and Claudia. 
5. We express no opinion on the question of the interest that would have been
conveyed by the deed if it had been community property of Sandy and Claudia Lightle. 
6. The Ninth Court of Appeals dismissed the appeal of cause number 9691 pursuant
to an agreed motion to dismiss on June 22, 2000. 
7. The first tract was described by metes and bounds in the M.P. Clark Survey, the
second was 100 acres consisting of portions of the 420 acres at issue, as described in the
October 13, 1993 deed to the Murrays.
8. See Tex. R. Civ. P. 783.
9. See generally 5 F. Lange & A. Leopold, Texas Practice 2d: Land Titles and Title
Examination §§ 1091-96 (1992); Katz v. Rodriguez, 563 S.W.2d 627, 629 (Tex.Civ.App.-
Corpus Christi 1977, writ ref'd n.r.e.) (discussing distinction between statutory trespass to
try title action and suit to quiet title). 
10. The disclaimer language, which appeared in almost identical form in Claudia's
second amended petition and in her motion for summary judgment, read as follows:


 Defendant [Nichols] admittedly owns various tracts of land which join the
subject property (420 acres) on one side or the other. Plaintiff makes no
claims to any of defendant's 160 acre homestead in the John Bricker Survey,
nor the 80.8345 acres (known as the dump) that defendant described in his
pleadings, nor the 100 acres of defendant's that lies outside the boundaries
of the 420 acres which is the subject of this suit.
11. Trimble v. Gulf Paint & Battery, Inc
. 728 S.W.2d 887 (Tex.App.-Houston [1st Dist.]
1987, no writ), cited by Nichols, is not to the contrary. That case holds the absence of a
jurat on a purported affidavit is not just a formal defect but is substantive and not waived
by failure to bring it to the trial court's attention. Citing the Government Code definition of
"affidavit," Tex. Gov't Code Ann. § 312.011, and other authority, the court noted that a
purported affidavit missing the jurat is not an affidavit but simply an unsworn statement and
not competent summary judgment proof. 728 S.W.2d at 889.
12. All three of the required elements of a common law marriage must exist at the
same time. Bolash v. Heid, 733 S.W.2d 698, 699 (Tex.App.-San Antonio 1987, no writ);
Gary v. Gary, 490 S.W.2d 929, 935 (Tex.Civ.App-Tyler 1973, writ ref'd n.r.e.).
13. Nichols also points to differences in the disclaimer language in Claudia's second
amended petition and a late-filed third amended petition. We need not address that issue
because our analysis and conclusion would be the same under either petition.
14. We note that Nichols' pleadings in this litigation did not assert the claim of a
surveying error and ten-acre overlap he made in cause number 9809.
15. This is a determination that cannot be made based on the record before us, and
one that we view as irrelevant to the trial court's judgment quieting title to the 420 acres in
Claudia. To the extent that acreage described in Nichols' counterclaim lies outside the
boundaries of the 420 acres, we view it as unaffected by the trial court's judgment.