Harold Ray LEWIS, Appellant,

v.

Mindy Jane ANDERSON, Appellee.

No. 05–03–01296–CV.

Court of Appeals of Texas,
Dallas.

Aug. 26, 2005.

Rehearing Overruled Oct. 24, 2005.

Richard R. Orsinger, Dallas, Carson Epes, Law Office of Carson P. Epes, Plano, for appellant.

Jerry Gilmore, Vial Hamilton Koch & Knox, John E. Richards, Glast, Phillips & Murray, Sheri D. Crosby, Dallas, for appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice MOSELEY.

In this case, we must determine whether the evidence supports the jury's finding that a common law or informal marriage existed between Mindy Jane Anderson and Harold Ray Lewis. In three issues, Lewis claims the evidence is legally and factually insufficient to support that finding and that the trial court improperly commented on the weight of the evidence in its instructions to the jury. We affirm the trial court's judgment.

### BACKGROUND

In 1998, Anderson left Lewis and filed for divorce. After Lewis denied the existence of a marriage, the trial court conducted a separate trial on the existence of

an informal marriage. A jury found that Anderson and Lewis were informally married and the trial court entered a judgment declaring the existence of an informal marriage. This judgment was later severed from the divorce action. After the trial court denied his motion for judgment notwithstanding the verdict and for new trial, Lewis perfected this appeal.

The record indicates that Anderson, a nurse, and Lewis, a medical doctor, were married in a formal ceremony in December 1974. They bought a house in 1976. Lewis testified that in 1976 or 1977, it became clear to him that a divorce was necessary. One of his reasons was that Anderson was reluctant to sign documents about financial matters. Anderson resisted the divorce, saying she was committed to the marriage. Lewis determined that divorce was absolutely necessary because he would not allow his "financial situation to be jeopardized by her emotional state." Lewis prepared the divorce papers himself without a lawyer and Anderson signed the waiver of service and divorce decree. Lewis presented the documents to the court and the divorce decree was signed on May 26, 1977.

Following the signing of the divorce decree, Anderson conveyed her interest in the residence to Lewis in August 1977. However, except for a few weeks in 1978 when Lewis (according to Anderson) locked her out of the house, Anderson and Lewis lived together for the next twenty years, until 1998. During this time, they joined a church as "Hal and Mindy Lewis" and adopted two children. Documents in both adoption proceedings referred to Anderson and Lewis as husband and wife, "Dr. and Mrs. Lewis," or "Harold and Mindy Lewis."

The couple attended Lewis family functions together and celebrated wedding anniversaries. Lewis wore a wedding ring until the couple separated in 1998. The record contains one tax return filed by the couple in 1997 as married filing jointly. Lewis could not remember whether earlier tax returns were filed jointly or singly, but said the 1997 return was a mistake and he had notified the IRS of the mistake.

Anderson testified she did not remember the 1977 divorce decree until sometime after this suit was filed in 1998. However, she wrote to Lewis sometime in 1978 about the termination of their marriage the previous year. She did not dispute the divorce or her signature on the waiver and divorce decree. The jury found the parties were informally married as of September 21, 1982, the date they filed the petition to adopt their first child.

## DISCUSSION

Lewis's first and second issues challenge the legal and factual sufficiency of the evidence to support the finding of an informal marriage. Specifically, he challenges the sufficiency of the evidence of an agreement to be married.

### 1. Legal Sufficiency of the Evidence

■ To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002) (plurality op.). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. June, 2005).

A common law, or informal, marriage may be proved by evidence that: (1) the parties agreed to be married and after the agreement; (2) they lived together in Texas as husband and wife; and (3) there represented to others that they were married. Tex. Fam.Code Ann. § 2.401(a)(2) (Vernon 1998). The proponent of a common law marriage may prove an agreement to be married by circumstantial as well as direct evidence. *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex.1993). The legislature has not excluded the finding of a tacit agreement to be married, but circumstantial evidence must be "more convincing" than before the 1989 amendments to the statute. *Id.* at 932. Direct evidence of an agreement to be married is not required. *Id.* at 933. Evidence of cohabitation and representations that the couple is married may constitute circumstantial evidence of an agreement to be married, but "the circumstances of each case must be determined based upon its own facts." *Id.*

Lewis makes three arguments in support of his first issue: (a) the evidence conclusively negates an agreement to be married; (b) there is no evidence of the holding out of a new marriage; and (c) there is no evidence of the date of the marriage found by the jury.

**(a) Evidence of Agreement to be Married**

The record contains evidence that after the 1977 divorce, Lewis and Anderson lived together as husband and wife in Texas and represented to others that they were presently married. In 1978, Anderson wrote Lewis a note expressing regret over their situation and acknowledging "the termination of our marriage and the resulting property settlement." She also stated, "I continue to be committed to a marriage with you and our future." After a few weeks of separation in 1978, the couple resumed living together and continued to live together for the next twenty years. They joined a church together in 1979 as "Hal and Mindy Lewis" and Anderson heard Lewis tell the pastor that they were married. The pastor testified the couple represented themselves as "Hal and Mindy Lewis" and he knew both of them by the name Lewis.

In 1982, the couple hired an attorney to adopt their first child in a private adoption. Correspondence from the adoption attorney referred to them as "Dr. and Mrs. Lewis." Anderson testified that Lewis told the attorney they were married. Lewis admitted he reviewed the lawyer's correspondence and never told the lawyer they were not married or were divorced. The petitions for termination of the parental rights of the birth mother and for adoption of the child signed by their attorney identified Anderson and Lewis as husband and wife. Correspondence arranging the social study for the adoption was addressed to "Dr. & Mrs. Harold Ray Lewis." Anderson heard Lewis tell the social worker they were married. She also heard Lewis testify in court at the adoption hearing that they were married. The decree of adoption signed by the judge on February 11, 1983 recites that "On this day Petitioners, Harold Ray Lewis and wife, Malinda Jane Lewis, appeared in person and by attorney and announced ready for trial." Lewis testified that he did not tell his attorney, the social worker, or the adoption court that he and Anderson were not married and were divorced because he did not feel it was important or relevant.

In 1985, the couple adopted another child through Hope Cottage. They signed a custody agreement with Hope Cottage as "Harold Ray Lewis and Malinda J. Anderson Lewis, husband and wife respectively." The document obligated them to reimburse Hope Cottage for expenses of the child and mother in the amount of

$5000.[1] Anderson heard Lewis tell Hope Cottage and testify in court that they were married. The adoption decree identified the parties as "Harold and Mindy Lewis." Anderson also heard Lewis tell their children that they were married, but never heard him tell the children they were divorced. Anderson testified that she and Lewis represented themselves as married to the children's schools.

Lewis argues there is no evidence of an agreement to be married after the divorce and that the evidence conclusively shows the opposite—that the couple did not agree to be married. Lewis points to some of Anderson's testimony that after the divorce, she and Lewis did not have discussions that they were "common law married" and that the only date she asserted they were married was the date of their 1974 ceremonial marriage. He also relies on Anderson's testimony that she felt her agreement to be married to Lewis began in 1974 and never ended. Lewis testified that there was no agreement to be married after the divorce.

Anderson also testified, however, that during the period after the divorce, she felt they were husband and wife. She said, "we had an agreement that we were married every year. We celebrated our anniversary every year." During cross-examination, she testified:

Q I'm sorry. You had discussions between 1977 and 1998 that you were informally married?

A We agreed that we were.

Q Is that what you just testified to?

A We had—we agreed that we were married. We didn't have a discussion as to whether it was formal or informal.

Q I apologize, I'm a little lost. Just a moment ago you testified, we had discussions that we were informally and formally married. Is that accurate?

A That's not accurate.

Q Okay. Thank you.

A We had discussions—

Q Did you—

A —that we were married.

While Anderson agreed that she and Lewis had not discussed being "common law married," she testified that they did agree they were married and had an agreement they were married every year. After the 1977 divorce, she did not believe there was any reason to talk about a common law marriage with or remarrying Lewis, "[b]ecause he told me we were married."

The issue here of course is not whether Anderson agreed to be married—she testified that she agreed to be married to Lewis from 1974 until she filed this action. The issue is whether there is some evidence that after the divorce, Lewis also agreed to be married to Anderson. Anderson's testimony that in the years after the divorce, she and Lewis agreed they were married and that Lewis told her they were married is at least some evidence that Lewis did agree to be married to Anderson after the divorce. That Anderson did not remember the divorce later, does not negate an agreement to be married after the divorce. *See Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 737 (Tex.App.-Texarkana 1996, no writ) ("She may have been mistaken about the effectiveness of the divorce decree, but so

---

1. "A forthright assertion of marriage with the consequence of liability (as when an alleged spouse seeks admission of the other to a hospital) may, on the other hand be far more probative of a tacit agreement to be married." *Russell*, 865 S.W.2d at 932 (quoting Joseph W. McKnight, *Family Law: Husband and Wife*, 44 Sw.L.J. 1, 2–3 (1990)).

long as she and Ricky met the requirements of a common law marriage sometime after the divorce and before he died, they were capable of entering into a new marriage after the acknowledged divorce."). It is undisputed that Lewis knew about the divorce; yet there is evidence that afterwards he told Anderson and others they were married. Anderson wanted to be married to Lewis and there is evidence that Lewis agreed with her after the divorce.

In addition to Anderson's direct testimony of an agreement to be married, the evidence of cohabitation and representations to others is circumstantial evidence of an agreement to be married. *See Russell,* 865 S.W.2d at 933 (stating agreement to be married may be shown by direct or circumstantial evidence or both). The jury could reasonably infer that Lewis and Anderson agreed to be married after their divorce.

Lewis relies primarily on *Gary v. Gary,* 490 S.W.2d 929 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.), a case decided some twenty years before *Russell.* However, each case must be decided on its own facts, *Russell,* 865 S.W.2d at 933, and we conclude *Gary* is distinguishable. *Gary* was a dispute over worker's compensation benefits between the parents of the deceased worker, Charles, and two woman who both claimed to be the common law wife of Charles. *Gary,* 490 S.W.2d at 931. After one of the women was dismissed on summary judgment, the jury heard evidence and found the other woman, Wanda, was Charles's common law wife at the time of his death. *Id.* The evidence indicated that Wanda married Charles, her third husband, in 1960 and divorced him a year later. They remarried the next year, but Wanda obtained a second divorce later that year. After the second divorce, they lived together for a while in various cities

for almost six years. However, the couple did not live together for at least a year before Charles's death and Wanda did not begin referring to herself as Wanda Cegale Gary until after his death. *Id.*

In *Gary,* Wanda did not argue she had an express agreement to be married to Charles, but asserted the evidence supported the finding of an implied agreement to be married. *Id.* 490 S.W.2d at 932. There was evidence that Charles occasionally introduced Wanda as his wife, but "[s]ince [Wanda] had twice been his wife by ceremonial marriage, and since neither [Charles] nor [Wanda] were sure their second divorce in 1962 was valid, the occasional use of the term 'wife' is of no probative value." *Id.* at 933. Further, there was evidence that neither party was sure that the second divorce was valid because they had not established residency in that county. They decided to resume living together thinking it was not necessary to go through another marriage ceremony. *Id.* The court of civil appeals stated that even if they agreed to go back together, because of the uncertainty over the validity of the second divorce, any agreement did not include an agreement to "become again husband and wife." *Id.* at 934. Thus, the appellate court concluded there was no evidence to support the jury's finding of a common law marriage. *Id.*

The facts here are different. Anderson does not rely solely on an implied agreement and there is at least some evidence of an express agreement to be married after the divorce. Therefore, it is not necessary to find evidence of an implied agreement. Moreover, neither Anderson nor Lewis dispute that the 1977 divorce terminated their 1974 ceremonial divorce. Anderson's 1978 note to Lewis acknowledged the "termination of our marriage." Anderson testified that she did not remember the divorce decree, but she did not dispute her

signature on the documents. There is evidence that for the twenty years they lived together after the divorce, they both represented to others that they were presently married.

The evidence of an express agreement, the lack of doubt about the validity of the divorce, the long cohabitation and adoption of children, the representations of a present marriage for an extended time, and Lewis's willingness to sign or accept without question legal documents referring to an existing marriage with Anderson distinguish this case from *Gary*. We also distinguish *Gary* because the evidence of holding out in this case is more convincing than in *Gary*. *See Russell*, 865 S.W.2d at 932 ("evidence of holding-out must be more convincing than before the 1989 [amendment]") (quoting Joseph W. McKnight, *Family Law: Husband and Wife*, 44 Sw. L.J. 1, 2–3 (1990)).

### (b) Holding out of a New Marriage

■ Lewis argues that the fact that he and Anderson did not tell anyone they were divorced, negates a holding out of a subsequent informal marriage. He argues the evidence they represented they were married following the divorce, was a holding out of the earlier ceremonial marriage (that was dissolved by the 1977 divorce). We disagree. While the parties did not discuss the divorce,[2] the divorce decree was a matter of public record and its validity was never disputed. As a matter of law, the 1974 ceremonial marriage was terminated. Thus, when the parties later represented that they were presently married, the representation was of a new, current marriage rather than the old, previously terminated ceremonial marriage.

Lewis also argues the equal inference rule prevents an inference of a holding out of a new agreement to be married following the divorce. He assets the evidence of holding out supports two inferences: (1) the parties represented they remained married under the 1974 ceremonial marriage; and (2) the parties represented they were married under a new post-divorce informal marriage. The equal inference rule applies in weak circumstantial evidence cases where the jurors would have to guess whether a vital fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). We conclude the equal inference rule does not apply because there was direct evidence of the holding out of a current marriage during the twenty years the couple lived together after their divorce. This is not a weak circumstantial evidence case; the jury was not required to guess whether Lewis and Anderson "represented to others that they were married." TEX. FAM.CODE ANN. § 2.401(a)(2).

Even so, the equal inference rule does not apply here because one of the competing inferences is not reasonable. Lewis argues it would be reasonable to infer from the evidence that the parties represented they remained married under the 1974 ceremonial marriage after the divorce. We disagree. There is evidence that after the divorce, both Lewis and Anderson represented to others that they were presently married. Some of this evidence was disputed; however, a reasonable jury could disbelieve the disputed evidence and resolve the disputes in favor of the finding of an agreement and holding out. Although there was evidence that the parties submitted the 1974 marriage certificate to the social worker in one or both of

---

**2.** There is evidence in the record that Lewis told his brother at some point that he and Anderson were divorced, and Lewis testified that Anderson told the staff of Hope Cottage during the second adoption that she and Lewis were divorced.

the adoptions, the undisputed facts remain that the ceremonial marriage was terminated by the 1977 divorce and that they represented they were presently married at the time of the adoptions.

Because the earlier ceremonial marriage had been terminated by the divorce, it is not reasonable to infer that the later representations of a present marriage were representations of the terminated marriage instead of a new agreement to be married. Certainly Lewis was aware of the divorce and the termination of the ceremonial marriage. The evidence that he later represented to others that he was presently married to Anderson leads to only one logical inference—the representation was of a new post-divorce marriage. Any inference that the parties could unilaterally nullify the divorce decree by holding out that they remained married under the 1974 ceremonial marriage would not reasonable.

### (c) Date of the Marriage

■ Lewis argues there is no evidence to support the jury's finding that they were informally married on September 21, 1982, the date the first adoption petition was filed. This date is significant because the petition was a representation by the couple through their attorney that they were husband and wife. The couple had been living together since 1978. Anderson testified that she and Lewis had an agreement they were married every year. There is evidence that Lewis told the attorney who prepared the petition that he and Anderson were married. Evidence that the parties continued to represent that they were married when they later adopted a second child tends to corroborate that they were married by the time of the first adoption. Thus, there is evidence that by the time the first adoption petition was filed, all of the elements of an informal marriage existed. *See Winfield v. Renfro,*

821 S.W.2d 640, 646 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (elements may occur at different times, but until all three exist there is no common law marriage).

### (d) Conclusion

Viewing the evidence in the light most favorable to the jury's finding, we conclude the evidence is such that reasonable minds could differ in their conclusions about whether Lewis and Anderson had an informal marriage. Crediting all favorable evidence that reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, we conclude the evidence is legally sufficient to support the jury's verdict. We resolve Lewis's first issue against him.

### 2. Factual Sufficiency of the Evidence

■ Lewis also argues the evidence is factually insufficient. To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985). This Court, however, is not a fact finder; we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

Lewis argues there is no direct evidence of an agreement to be married nor of a holding out of a post-divorce informal marriage. We have already concluded there is legally sufficient evidence of an agreement to be married after the divorce and that the representations that the couple was

married in the years following the divorce was a representation of a current marriage post-dating the termination of the ceremonial marriage. We do not repeat that discussion.

In support of the factual insufficiency issue, Lewis points to his testimony that he and Anderson never agreed to be married following their divorce and never discussed whether they were married or were going to be married. He also testified that in 1994, he made arrangements to remarry Anderson, but she refused, saying she would not consent to being married to him. He denied ever representing to anyone (their pastor, lawyer, the social workers, or the adoption courts) that he was married to Anderson after the divorce. He testified that Anderson told the representatives of Hope Cottage that she and Lewis were divorced. He said the 1997 joint tax return was a mistake and he had contacted the IRS about the mistake.

There is also evidence that Lewis and Anderson kept separate banking arrangements and that Anderson continued to use her maiden name. For example, in 1980, Anderson purchased a house individually as "Mindy Anderson, a single woman." However, when Anderson sold the house in 1985, the deed referred to her as "Mindy Anderson Lewis," but was signed on her behalf by her agent.

■ The record indicates much of the testimony was conflicting. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc., v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003). While not always clear and consistent, Anderson did testify to an agreement and holding out. It was up to the jury "to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the *testimony of different witnesses." Ford v. Panhandle & Santa Fe Ry. Co.,*

151 Tex. 538, 542, 252 S.W.2d 561, 563 (1952). After reviewing all the evidence, we cannot say the evidence is so weak that the jury finding of an informal marriage on September 21, 1982 is clearly wrong and unjust. Thus the evidence is factually sufficient to support the verdict. We resolve Lewis's second issue against him.

### 3. Jury Instruction

■ In his third issue, Lewis asserts the trial court improperly commented on the weight of the evidence in its instructions to the jury. We review the trial court's submission of jury definitions and instructions under an abuse of discretion standard; trial courts have "wide discretion to determine sufficiency of definitions and instructions." *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex. 1995). Although the court in its charge may not comment directly on the weight of the evidence, the *charge is not objectionable* because it "incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition." TEX.R. CIV. P. 277. To be a direct comment on the weight of the evidence, the language must suggest the trial court's opinion concerning the issue. *Maddox v. Denka Chem. Corp.,* 930 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no writ).

■ Lewis objected to the following instruction:

> You are instructed that proof of an agreement to be married may be established by circumstantial evidence or the conduct of the parties. Proof of cohabitation and representation to others that the couple are married may constitute circumstantial evidence of an agreement to be married.

He argues the instruction is an incorrect statement of the law under *Russell;* constituted a comment on the weight of the evidence by focusing the jury's attention on only two of the three elements of an informal marriage; and duplicated the general instruction on circumstantial evidence.

Lewis argues the instruction misstates the law in *Russell* because it does not also instruct the jury that the fact may be proved by direct evidence or a combination of direct and circumstantial evidence. However, the trial court gave a general instruction that a fact may be established by direct evidence or by circumstantial evidence or by both, and defined both direct and circumstantial evidence for the jury. Further, the language in the instruction is directly quoted from *Russell,* 865 S.W.2d at 933.

The trial court determined the instruction was warranted under the circumstances of this case. There was at least some direct evidence of an agreement to be married through Anderson's testimony. In addition, there was circumstantial evidence of such an agreement based on cohabitation and representations of marriage. The instruction was not mandatory and instructed that an agreement "may" be established by circumstantial evidence and that evidence of cohabitation and representation to others "may" be circumstantial evidence of an agreement to be married. To the extent the instruction commented on the evidence, it did so only incidentally and did not suggest the trial court's opinion concerning the issue. We cannot say the trial court abused its discretion in giving the instruction based on the facts of this case.

Finally, Lewis argues the instruction was duplicative of the general definition of circumstantial evidence. However, the instruction did not redefine circumstantial evidence; it was a correct statement of the law as applied in this case, was supported by the evidence, and was helpful to the jury in answering the questions presented to them. *See Louisiana–Pacific Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex.1998). Moreover, even if the instruction was erroneous, after reviewing the entire record, we cannot conclude that the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1); *Knighten,* 976 S.W.2d at 675–76; *Dallas County Sheriff's Dept. v. Gilley,* 114 S.W.3d 689, 691 (Tex.App.-Dallas 2003, no pet.). We resolve Lewis's third issue against him.

We affirm the trial court's judgment.