**Affirmed and Opinion Filed December 12, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-22-00898-CV

**CITY OF EULESS, SELF-INSURED, Appellant**
**V.**
**MARTA DANYLYK, HELMUT HOFER, SOFIJA HOFER AND THE TEXAS SUBSEQUENT INJURY FUND, Appellees**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-01243-2017**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Partida-Kipness

This case involves a dispute over an informal marriage and the proper recipient of worker's compensation death benefits. The Texas Department of Insurance, Division of Workers' Compensation (DWC) determined Appellee Marta Danylyk (Danylyk) is the surviving spouse of David Hofer (Hofer) and entitled to death benefits. Appellant City of Euless (Euless) unsuccessfully challenged that determination in the district court. Euless now appeals the trial court's judgment confirming the DWC's decision and order. In three issues, Euless challenges the legal and factual sufficiency of the evidence to support the jury's verdict and asserts

the trial court reversibly erred by refusing Euless's requested jury instructions. We affirm.[1]

## BACKGROUND[2]

Danylyk and Hofer met in New York in 2011 and began dating in February 2012. At that time, Hofer served as a police officer for the City of New York. Danylyk and Hofer began living together in New York in November 2013. The couple moved to Texas together in January 2014, where Hofer began employment with the Euless Police Department. The couple initially lived in an apartment while they searched for a house. On September 14, 2014, Hofer took Danylyk on a pre-arranged ride-along in his patrol car. Hofer then surprised Danylyk with a proposal and presented her with an engagement ring and a wedding band, with family and other officers witnessing the event. The couple purchased a home together in November 2015.

Tragically, Hofer was killed in the line of duty on March 1, 2016. He is survived by his father Helmut Hofer, his mother Sofija Hofer, two siblings, and Danylyk. After Hofer's death, Ashlee Byers, the president of a local volunteer organization for the spouses and family members of fallen officers, offered her

---

[1]    The Texas Subsequent Injury Fund is no longer a party to this suit. The trial court granted the DWC's plea to the jurisdiction, ruling the DWC is not a necessary or indispensable party to the suit. The court also dismissed the claims against the Texas Subsequent Injury Fund with prejudice because the fund lacked the capacity to be sued.

[2]    We provide additional details in our analysis of Euless's sufficiency challenges.

assistance.[3] Byers informed Danylyk even though she and Hofer did not have a wedding ceremony, under Texas law they could still be married and Danylyk could qualify for death benefits. Danylyk then began an heirship determination proceeding in Collin County Probate Court.

The probate court appointed attorney ad litem Charlotte Key to assist in determining heirship. After review of the records and interviews with Hofer's family and friends, Key determined Danylyk was the sole heir to Hofer's estate. Hofer's parents supported Danylyk's heirship application. After considering the evidence, Collin County Probate Court Judge Weldon Copeland granted Danylyk's application, concluding Danylyk was Hofer's sole heir and surviving spouse. Danylyk then sought death benefits from Euless, a worker's compensation self-insurer.

Euless challenged Danylyk's status as Hofer's widow and heir before the DWC. After a contested case hearing, an administrative law judge determined Danylyk was a surviving spouse and entitled to death benefits under the Texas Workers' Compensation Act. *See* TEX. LABOR CODE §§ 410.151-.169. The DWC appeals panel did not disturb that decision. After Euless exhausted its DWC remedies, it filed this suit for judicial review. The case was tried to a jury, which returned a unanimous verdict against Euless. The jury concluded Euless did not

---

[3] That volunteer organization is "Concerns of Police Survivors," a.k.a. "C.O.P.S."

prove by a preponderance of the evidence Danylyk was not an eligible spouse at the time of Hofer's death. The trial court signed a judgment affirming the DWC's decision. Euless's post-verdict motions were overruled by operation of law. Euless now appeals, challenging the sufficiency of the evidence to support the verdict and the omission of its requested jury instructions.

## STANDARDS OF REVIEW

### I. Appeals From DWC Final Decision

The party appealing the final decision of the DWC bears the burden of proof by a preponderance of evidence. *Davis v. Texas Mut. Ins. Co.*, 443 S.W.3d 260, 266 (Tex. App.—Dallas 2014, pet. denied) (citing TEX. LABOR CODE § 410.303). Judicial review of the appeals panel's decision is limited to the issues that were before the appeals panel; however, the fact finder does not simply review the appeals panel decision for reasonableness, but decides the issues independently based on a preponderance of the evidence. *Id.*

### II. Legal Sufficiency

In reviewing legal sufficiency of the evidence, we must consider the evidence in the light most favorable to the fact finder's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The final test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. Reviewing courts must credit favorable evidence if reasonable jurors could, and

disregard contrary evidence unless reasonable jurors could not. *Id.* Jurors are the sole judge of witnesses' credibility and the weight to give to their testimony. *Id.* at 819. The jury may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary. *Id.* We must assume jurors resolved all conflicts in accordance with their verdict if reasonable human beings could do so. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court employs a two-part test. The reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

## III.    Factual Sufficiency

In a factual sufficiency review, we must examine both the evidence supporting and contrary to the judgment. *See Dow Chem. Co.*, 46 S.W.3d at 242; *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The jury is the sole judge of witnesses' credibility and the weight given to their testimony. *Golden Eagle*

*Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). A reviewing court must not merely substitute its judgment for that of the jury. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. The court of appeals must consider and weigh all the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

## IV. Jury Charge Error

We review a trial court's decision to submit or refuse a particular jury instruction for an abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018). But we do not reverse a judgment based on charge error unless the error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the court of appeals. *Id.*; TEX. R. APP. P. 44.1.

## ANALYSIS

In three issues, Euless asserts: (1) the evidence is legally and factually insufficient to establish Danylyk and Hofer agreed to be married, (2) the evidence is legally and factually insufficient to establish Danylyk and Hofer represented to others they were married, and (3) the trial court reversibly erred in refusing to submit several jury instructions regarding informal marriage. We address each issue in turn.

## I.     Danylyk And Hofer Agreed To Be Married

In its first issue, Euless contends the evidence is legally and factually insufficient to establish Danylyk and Hofer agreed to be married. Because Euless challenged the DWC's determination that Danylyk was an eligible spouse and Hofer's proper legal beneficiary, at trial Euless had the burden to prove by a preponderance of the evidence that Danylyk was *not* an eligible spouse. TEX. LABOR CODE § 410.303. Thus, the sole jury question inquired: "Was Marta Danylyk not an eligible spouse of David Hofer at the time of David Hofer's death?" The jury answered "No."

An informal, or common-law marriage may be proved by evidence: (1) the parties agreed to be married, (2) after the agreement they lived together in Texas as husband and wife, and (3) they represented to others that they were married. TEX. FAM. CODE § 2.401(a)(2); *Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied).

To establish an agreement to be married, the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and they did in fact agree to be husband and wife. *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An agreement to be married may be proved by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). The testimony of one of the parties to the marriage constitutes some

direct evidence the parties agreed to be married. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Proof of cohabitation and representations to others that the couple are married may constitute circumstantial evidence of an agreement to be married. *Russell*, 865 S.W.2d at 933. The statutory requirement "represented to others" is synonymous with the judicial requirement of "holding out to the public." *Eris*, 39 S.W.3d at 714–15. "Holding out" may be established by the conduct and actions of the parties. *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at *1 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.). Proving a reputation for being married requires evidence the couple "consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* at *2. Isolated references to each other as husband and wife alone do not establish a holding out. *Id.* But spoken words are not necessary to establish representation as husband and wife. *Eris*, 39 S.W.3d at 715. The couple's reputation in the community as being married is a significant factor in determining the holding out element. *Id.*; *Danna*, 2006 WL 785621, at *1. Each case must be determined based upon its own facts. *Russell*, 865 S.W.2d at 933; *Lewis*, 173 S.W.3d at 559.

A.    **Legal sufficiency review**

Danylyk testified she and Hofer agreed to be married. This agreement did not come about through a single conversation but occurred over multiple conversations. She testified the couple decided to move to Texas together because they were

–8–

"committed," "it's us and [nobody] else for us for the rest of our lives," and "this was going to be our forever until death do us part." At the September 14, 2014 proposal ceremony, Hofer gave Danylyk a *wedding* ring and an engagement ring. Danylyk swore before the probate court she and Hofer agreed to be married on September 14, 2014, the date of the formal proposal, and considered this date to be their anniversary. Danylyk also testified the proposal ceremony didn't change anything about their relationship. Danylyk stated the two were married at the time the couple closed on their house in Plano. Hofer's parents declared under oath to the probate court Hofer was married to Danylyk when Hofer died.

The foregoing is direct evidence Hofer and Danylyk agreed to be married. *See Lewis*, 173 S.W.3d at 560 (alleged wife's testimony that in the years after a divorce, she and purported husband agreed they were married and husband told her they were married was some evidence of an agreement to be married); *Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602, at *2 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (wife's uncontroverted testimony she and alleged husband had an agreement was sufficient to show an agreement to be married); *Eris*, 39 S.W.3d at 714 (alleged husband's testimony wife told him they "didn't have to be married to be married," and after this conversation he considered they were married, was more than a scintilla of direct evidence the two agreed to be married); *Small*, 352 S.W.3d at 283-84 (wife's testimony alleged husband agreed to be married, they exchanged rings in a private ceremony, and husband promised he

would wear her ring and regard himself as her husband until they were married in a church was some direct evidence of an agreement to be married); *In re Estate of Giessel*, 734 S.W.2d 27, 32 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (widow's testimony she and decedent had agreed to be married "in God's eyes" was direct evidence of an agreement to be married).

Beyond the direct evidence, there is circumstantial evidence of an agreement to be married: cohabitation and representations to others. Danylyk and Hofer began living together in New York in November 2013. They moved to Texas together in 2014 and lived together in an apartment. They jointly financed and purchased a home together in November 2015. A loan application indicated the title would be held as "community property." They never lived separately up until Hofer's death in March 2016.[4]

Danylyk testified she and Hofer held themselves out as husband and wife after moving to Texas. She further stated Hofer's sergeant introduced the couple as "the Hofers" at a Christmas party, they received invitations as "the Hofers," and neighbors referred to them as such. Several witnesses offered corroborating testimony. Hofer's father Helmut testified Danylyk and Hofer consistently conducted themselves as husband and wife in public and the proposal ceremony was confirmation of that fact. Hofer's mother Sofija stated Danylyk and Hofer began

---

[4] Euless does not attack the evidence of the couple's cohabitation from 2013 until Hofer's 2016 death.

living as husband and wife when they moved into the apartment in New York and began to hold themselves out in public as a married couple on September 14, 2014. The couple's real estate agent Denise McPeters said when Hofer reached out to her about purchasing a Texas home, she was left with the impression Hofer and Danylyk were married. Attorney ad litem Key testified everyone she spoke to during her investigation for the probate court said Hofer and Danylyk held themselves out as husband and wife. Euless Police Chief Michael Brown believed they were married. In the immediate aftermath of Hofer's death, Euless Police Lieutenant Brandon Zachary tended to Danylyk and treated her as Hofer's wife. Euless Assistant Police Chief Gary Landers testified Hofer and Danylyk were spouses, minus a piece of paper. He further stated the consensus at the police department was Danylyk is a surviving spouse. Ashlee Byers—the C.O.P.S. representative—met with Danylyk immediately after Hofer's death. Danylyk told her she and Hofer lived together and did all the things married people do, and friends called them husband and wife.

The foregoing evidence of cohabitation and representing to others is circumstantial evidence of an agreement to be married. *See Lewis*, 173 S.W.3d at 559-62 (evidence sufficient to establish an agreement to be married, where, after their divorce, couple cohabitated for twenty years, adopted two children, made representations to others they were married, and man willingly signed and accepted legal documents referring to existing marriage of couple).

Euless contends there is no direct or circumstantial evidence Danylyk and Hofer agreed to be married, relying largely on *Lorensen v. Weaber*, 840 S.W.2d 644, 646 (Tex. App.—Dallas 1992), writ granted (Feb. 10, 1993), *rev'd sub nom. Russell v. Russell*, 865 S.W.2d 929 (Tex. 1993). *Lorensen* is distinguishable because nowhere in the record did the proponent (Weaber) assert she and Lorensen agreed to be married. *Id*. And the trial court's conclusion Weaber and Lorensen were informally married on February 16, 1982 was directly contradicted by Weaber's own testimony she did *not* consider herself married at that time. *Id.* at 647. Here, Danylyk testified she and Hofer agreed to be married; there was no contrary testimony. The evidence discussed above supports Danylyk's testimony.

Euless asserts the agreement was not specific and there was no "meeting of the minds," pointing to Danylyk's testimony the agreement happened over a series of conversations and the date of their marriage was "fluid." Euless cites *Gary v. Gary*, 490 S.W.2d 929 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.) in support. But *Gary* does not hold that an agreement to be married must be tied to a specific date or cannot be supported by multiple conversations. Indeed, such a requirement would be contrary to the rule that cohabitation and representations to others—events which happen over time—can provide circumstantial evidence of an agreement. And in *Gary*, the purported wife (Wanda) did not argue she had an express agreement to be married, but asserted the evidence supported an implied agreement. *Id.* at 932. However, the couple did not live together for at least a year before Charles Gary's

death and Wanda did not begin referring to herself as Wanda Cegale Gary until after Charles's death. *Id.* Here, Danylyk testified she and Hofer agreed to be married. Other witnesses testified they were married. The evidence of cohabitation and representing to others corroborates the agreement.

Euless further asserts there is no "particularly convincing" circumstantial evidence the couple agreed to be married, relying on *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied). But in *Assoun*, it was a third-party (the ex-husband) who tried to establish a marriage between his ex-wife and her new partner by way of circumstantial evidence. *Id.* at 162-63. However, there was *direct* evidence from the purported spouses they had *not* agreed to be married. *Id.* at 162-63. In the face of this direct evidence from the couple, the ex-husband's circumstantial evidence could not create a fact issue. Here, there is no evidence Hofer or Danylyk disputed they were married before Hofer's death. And there is no evidence from any other person disputing the couple agreed to be married.

Euless has challenged an adverse jury finding on which it had the burden of proof. Accordingly, Euless first had to establish there is no evidence supporting the jury's implied finding Hofer and Danylyk agreed to be married. After examining the record for evidence supporting the finding, while ignoring all evidence to the contrary, we conclude there is legally sufficient evidence to support the jury's finding. Euless has not met its burden under the first step in our inquiry. *See Dow Chem. Co.*, 46 S.W.3d at 241.

And while we need not examine the second part of the inquiry–whether Euless conclusively established as a matter of law Danylyk and Hofer did *not* agree to be married–we do so for completeness, and considering Euless's factual sufficiency challenges below.

Euless asserts the evidence conclusively proved Danylyk and Hofer had not agreed to be married, particularly because Danylyk and Hofer never had a singular conversation where they said "we agree to be married." Euless points to Danylyk's testimony she believed September 14th to be the date of her wedding anniversary, while admitting it could have been some date before she moved to Texas. Euless also points to testimony the couple intended to have a ceremonial wedding later. But Danylyk testified she selected September 14th as the date of her agreement because "it was a date that had some significance for our relationship" and "we needed a date for documentation" for the probate court. And she testified the proposal ceremony did not change anything about the status of their relationship; they had already agreed to be married. *See Aguilar v. State*, 715 S.W.2d 645, 648 (Tex. Crim. App. 1986) ("[A]n intention to be ceremonially married on some future occasion does not necessarily negate the inference that the parties believe they are already married by common law."). And as discussed, an agreement to be married need not be tied to a singular date or conversation, and there was direct evidence Danylyk and Hofer agreed to be married.

Euless also relies on Danylyk's testimony that after the proposal ceremony, the couple would occasionally refer to each other as husband and wife, but mainly called each other "fiancé" or "fiancée." But as discussed, Danylyk also testified she and Hofer held themselves out as husband and wife after moving to Texas, and other witness and documentary evidence supported this assertion. Any discrepancies or inconsistencies about the existence of an agreement, its timing, or the couple's representations to the public go to the witnesses' credibility and the weight accorded to the evidence. Resolving these issues was solely within the jury's province, and we assume the jurors resolved all conflicts in accordance with their verdict. *City of Keller*, 168 S.W.3d at 822. Considering the evidence in the light most favorable to the jury's decision, we conclude Euless failed to establish as a matter of law that Danylyk and Hofer did not agree to be married.

### B.     Factual sufficiency review

Euless asserts the jury's implied finding Danylyk and Hofer agreed to be married is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Euless's sole argument is Danylyk admitted she and Hofer never entered into an agreement to be married. But the direct and circumstantial evidence discussed above supported that Danylyk and Hofer agreed to be married. Although the evidence may be conflicting, it turns on the witnesses' credibility and demeanor, and the weight given to the evidence. These matters were for the jury to resolve. We cannot say the evidence of an agreement to

be married is so weak as to be clearly wrong and manifestly unjust. *Small*, 352 S.W.3d at 284 (evidence factually sufficient to support an agreement to be married, where couple exchanged rings, had a private ceremony, and witnesses testified the couple agreed to be married, despite husband's conflicting evidence).

We reject Euless's challenges to the legal and factual sufficiency of the evidence supporting an agreement to be married. We overrule Euless's first issue.

## II. Danylyk and Hofer Represented To Others They Were Married

In its second issue, Euless challenges the legal and factual sufficiency of the evidence to support that Danylyk and Hofer represented to others they were married.

Again, the statutory requirement of "represented to others" is synonymous with the judicial requirement of "holding out to the public." *Eris*, 39 S.W.3d at 714–15. This may be established by the conduct and actions of the parties. *Danna*, 2006 WL 785621, at *1. The evidence must show the couple "consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id*. at *2. Isolated references to each other as husband and wife alone do not establish a holding out. *Id*. The couple's reputation in the community as being married is a significant factor in determining the holding out element. *Id.* at *1; *Eris*, 39 S.W.3d at 715.

### A. Legal sufficiency review

As discussed above, Danylyk testified she and Hofer held themselves out as husband and wife after moving to Texas. They were introduced to others as "the

Hofers" at social gatherings and received invitations in like manner. Neighbors referred to them as such. Hofer's parents testified the couple consistently conducted themselves as husband and wife in public. Real estate agent McPeters said Hofer left her with the impression Hofer and Danylyk were married. Hofer and Danylyk purchased their home as community property. Attorney ad litem Key testified everyone she spoke to during her investigation said Hofer and Danylyk held themselves out as husband and wife. Euless Police Chief Brown and other officers thought Hofer and Danylyk were spouses; that was the consensus at the department. C.O.P.S representative Byers testified Danylyk told her the couple's friends called Hofer and Danylyk husband and wife.

This is more than a scintilla of evidence Danylyk and Hofer represented to others they were married. *Eris*, 39 S.W.3d at 715 (legally sufficient evidence of the "holding out" element present where husband's friends and employees testified they thought the couple was married because they lived together and acted as if they were married, and husband testified he introduced appellant as his wife and she never contradicted him); *Quinn v. Milanizadeh*, No. 01–07–00489–CV, 2008 WL 1828327, at *6-7 (Tex. App.—Houston [1st Dist.] April 24, 2008, no pet.) (mem. op.) (evidence sufficient to support holding out element where couple referred to themselves as husband and wife to their friends and families, held themselves out as married when obtaining a VA loan, purchased a timeshare as husband and wife, and the couple's families considered them to be married); *Omodele*, 2003 WL 133602,

at *3 (purchase of property as community property suggested the parties held themselves out as married). Euless failed to meet its burden in the first step of the legal sufficiency inquiry.

As for the second step of Euless's legal sufficiency challenge, Euless contends it conclusively established Danylyk and Hofer did not represent to others they were married. Euless argues no document created prior to Hofer's death referred to Hofer and Danylyk as married. Euless relies heavily on numerous documents from 2013 to 2015 wherein Hofer or Danylyk represented their marital status as "single." These include:

- Hofer's 2013-2014 employment records with the City of Euless

- Hofer's 2013-2014 state and federal tax records

- Danylyk's 2013-2014 state and federal tax records

- Danylyk's 2014-2015 employment records

- 2015 home purchase documents (loan applications, closing documents, deed, title insurance).

Euless further asserts every document created after Hofer's death but before the filing of the heirship proceeding indicates Hofer was "never married" and Danylyk was his fiancée. These documents include hospital pastoral care notes, the original death certificate, funeral home records, and a newspaper obituary. Euless also points to statements by police and city leaders at a press conference and memorial services describing Danylyk as Hofer's fiancée.

However, Danylyk testified the couple's home states of New York and New Jersey do not recognize common-law marriage, and she was unfamiliar with the legal concept. She did not know she could represent herself as "married" on documents and records without possessing a legal document indicating they were married. Consistent with that, once the probate court determined Danylyk was the surviving spouse, Danylyk had the death certificate amended to indicate Hofer was married and Danylyk was the surviving spouse. The jury impliedly accepted her explanation regarding the earlier documents. *See Giessel*, 734 S.W.2d at 30 (common-law wife testified she never used husband's last name because she thought she could not change her name without a formal marriage license).

Euless had the burden to conclusively establish Danylyk and Hofer did not represent themselves to others as married. While the aforementioned documents and oral statements may be some controverting evidence, they do not establish as a matter of law that Hofer and Danylyk did not represent themselves as married. *Giessel*, 734 S.W.2d at 31 ("Kuchera's representations in tax returns and other documents that she was single go to the weight of the evidence; they do not negate a marriage, as a matter of law.").

Euless urges the supreme court's decision in *Ex parte Threet*, 333 S.W.2d 361 (Tex. 1960) and our decisions in *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.), *Smith v. Deneve*, 285 S.W.3d 904 (Tex. App.—Dallas 2009, no pet.), and *Castillon v. Morgan*, No.

–19–

05-13-00872-CV, 2015 WL 1650782 (Tex. App.—Dallas Apr. 14, 2015, no pet.) (mem. op.) compel a conclusion there is no legally sufficient evidence Danylyk and Hofer represented themselves to others as married. We disagree.

First, the procedural posture is key. In those cases, the purported spouse attempted to prove the existence of an informal marriage. Here, Euless had the burden to *disprove* the existence of an informal marriage. Second, *Threet*, *Danna*, *Smith*, and *Castillon* are factually distinguishable.

In *Threet*, the woman kept the alleged marriage secret, telling only a few of her close relatives, a gas station attendant, and an attorney about the marriage. *Threet*, 333 S.W.2d at 363-64. She continued using her own name and publicly represented to those at her school and work she was a single person. *Id.* The alleged husband disputed the marriage and testified he never heard of being married until shortly before he was sued for divorce. *Id.* The court concluded "secrecy is inconsistent and irreconcilable with the requirement of a public holding out." *Id.* at 364-65.

In *Danna,* the appellant relied on testimony by four witnesses recounting isolated instances where the couple held themselves out as husband and wife. *Danna*, 2006 WL 785621, at *1-2. But the *Danna* husband challenged any common-law status, even publishing notices in a newspaper stating he was not married to the woman. *Id.* There were a few pieces of contested documentation supporting the

couple's marital status but no evidence it was seen by the wider community or that said community believed the couple was married. *Id.*

Similarly, the alleged husband in *Smith* relied on certain contracts in which he and Deneve were listed as husband and wife. *Smith*, 285 S.W.3d at 910. But there was no evidence Deneve made these representations or that anyone in the community saw those contractual representations. *Id*. And while Smith testified he and Deneve had been introduced by others as husband and wife, he adduced no evidence the events were common or rare, or that he and Deneve had any reputation in the community for being married. *Id*.

Finally, in *Castillon*, alleged wife Morgan testified she and Castillon represented themselves as married but presented no evidence of the frequency of these representations. *Castillon*, 2015 WL 1650782, at *3-4. Morgan also pointed to insurance policies and a homebuyer information sheet listing her and Castillon as spouses but produced no evidence anyone in the community saw these documents. *Id*. Morgan did not have or wear a wedding ring and produced no evidence of the couple's reputation in the community for being married. *Id*.

Here, statements from disinterested witnesses—Hofer's parents, real estate agent McPeters, attorney ad litem Key, Chief Brown, Assistant Chief Landers, and Lieutenant Zachary—supported that Danylyk and Hofer held themselves out as

married and had a reputation in the community for such.[5] Danylyk produced evidence that friends, neighbors, and the police community viewed Hofer and Danylyk as spouses. The supporting evidence exceeds the self-serving testimony and documents offered in Euless's cited cases. And there is no testimony Hofer or anyone in the community contested the couple's marital status.

Considering the evidence in the light most favorable to the jury's decision, we conclude Euless failed to establish as a matter of law Danylyk and Hofer did not represent themselves to others as married. Euless's legal sufficiency challenge fails.

## B.     Factual sufficiency review

Euless contends the jury's implied finding Danylyk and Hofer represented to others they were married is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Euless relies on the same tax, employment, and real estate documents and post-death communications discussed above as evidence the couple did not hold themselves out as married. For the same reasons discussed above, contrary evidence supported Danylyk and Hofer represented to others they were married. There was substantial evidence before the jury to support either an affirmative or negative answer to the issue. The jury could have placed more weight on the testimony of Danylyk, Hofer's

---

[5]     Hofer's parents stood to gain financially from Hofer's death benefits if they had successfully challenged Danylyk's status as Hofer's spouse and sole heir. Their knowing relinquishment of any claim to Hofer's benefits was "significant evidence that Mr. and Mrs. Hofer sincerely believed there was a marital relationship," according to the probate court.

parents, police colleagues, and others, and less weight on the documents and communications relied upon by Euless. The jury chose to believe Danylyk over Euless. We cannot say the evidence of representing to others is so weak as to be clearly wrong and manifestly unjust. *Giessel*, 734 S.W.2d at 32; *Romano v. Newell Recycling of San Antonio, LP*, No. 04-07-00084-CV, 2008 WL 227974, at *6 (Tex. App.—San Antonio Jan. 30, 2008, no pet.) (mem. op.) (evidence factually sufficient to support trial court's findings of a common-law marriage; conflict in testimony and documentary evidence "do not preclude a finding that a [common-law] marriage existed . . . rather the conflicts go to the weight of the evidence and were for the [fact finder] to resolve.").

Euless's challenges to the legal and factual sufficiency of the evidence supporting the "represented to others" element of an informal marriage fail. We overrule Euless's second issue.

## III. Jury Charge

In its third issue, Euless contends the trial court reversibly erred in refusing to submit five explanatory instructions in the jury charge.

A trial court has considerable discretion to determine proper jury instructions, and we review a trial court's decision to submit or refuse a particular instruction for an abuse of discretion. *Gunn*, 554 S.W.3d at 675. An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Id*. We do not reverse a judgment based on charge error unless the

error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the court of appeals. TEX. R. APP. P. 44.1(a). Thus, when a trial court refuses to submit a requested instruction that is otherwise proper, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Gunn*, 554 S.W.3d at 675.

The jury should not be burdened with surplus instructions, even if they are proper statements of the law. *Dallas Cnty. v. Holmes*, 62 S.W.3d 326, 332 (Tex. App.—Dallas 2001, no pet.). If a trial court's charge fairly and fully presents all controlling issues to the jury, it is not error to refuse to submit additional issues or instructions that are mere shades or variations of the issues already submitted. *Daugherty v. Highland Cap. Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *13 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.).

Here, the sole jury question included a definition of "informal marriage" which tracked the Family Code and the pattern jury charge:

> An "informal marriage" is established by evidence that a man and woman agreed to be married, and after the agreement, they lived together in Texas as husband and wife and, there represented to others that they were married.

*See* TEX. FAM. CODE § 2.401(a)(2); Comm. on Pattern Jury Charges, State Bar of Tex., TEXAS PATTERN JURY CHARGES: FAMILY PJC 201.4A (2022).

The trial court rejected Euless's requests to include the following instructions:

**Requested Instruction No. 2**

To establish that David Hofer and Marta Danylyk agreed to be husband and wife, the evidence must show that they intended to create an immediate and permanent marital relationship and that they did in fact agree to be husband and wife.

**Requested Instruction No. 3**

Present consent and agreement to be married is the gist of an informal marriage, and it is not sufficient to agree on present cohabitation and future marriage. The agreement necessary for an informal marriage must be specific from both sides.

**Requested Instruction No. 4**

The element "represented to others" requires more than occasional references to each other as "wife" and "husband."

**Requested Instruction No. 5**

Whether David Hofer and Marta Danylyk had a reputation in the community for being married to one another is a significant factor in your determination of whether David Hofer and Marta Danylyk each represented to others that they were married.

**Requested Instruction No. 6**

Proving a reputation for being married requires evidence that David Hofer and Marta Danylyk consistently conducted themselves as husband and wife in the public eye or that the wider community viewed them as married.

Our supreme court has generally advised that a jury charge for a statutory cause of action should track the statutory language as closely as possible. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) ("The language may be slightly altered to conform the issue to the evidence presented in the case, but a court should not burden a jury with surplus instructions.") (internal citation omitted). The trial court's charge tracked the Family Code provision on informal

–25–

marriage and the PJC. The trial court did not abuse its discretion in refusing to burden the jury with the surplus instructions, even if they accurately state the law. *Westerman v. Richardson*, No. 13-02-420-CV, 2004 WL 100400, at *1–2 (Tex. App.—Corpus Christi–Edinburg Jan. 22, 2004, no pet.) (mem. op.) (no abuse of discretion where trial court used pattern jury charge tracking statutory definition of informal marriage and refused more detailed instructions on "representing to others"); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 351 (Tex. App.—Austin 2002, pet. denied) (no abuse of discretion in refusing instruction "The element of representing to others is not satisfied by an occasional uncontradicted reference to a cohabitant as 'my wife' or 'my husband' or 'mine.'").

Euless cites numerous cases in support of its argument, but only *Grumbles v. Ineos USA, LLC*, No. 13-18-00316-CV, 2019 WL 2622339 (Tex. App.—Corpus Christi June 27, 2019, pet. denied) (mem. op.) involved a jury charge issue. And the *Grumbles* court simply held the trial court did not abuse its discretion in including an instruction similar to Euless's requested instructions four and five, not that such instructions are required. *Id.* at *4-5. And again, the procedural posture differs. The Grumble plaintiff had the burden to prove the existence of the common-law marriage. *See id.* Here, Euless had the burden to disprove the existence of the marriage. The addition of the requested instructions could have improperly suggested to the jury Danylyk had the burden to prove her marriage. *See Ganesan*, 96 S.W.3d at 351 ("In effect, Ganesan tendered the instruction so the court could

–26–

provide the jury guidance on the weight to give the evidence, which would have been an impermissible comment by the trial court.").

Further, Euless does not explain why or how each of the omitted instructions probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Muhs v. Whataburger, Inc.*, No. 13-09-00434-CV, 2010 WL 4657955, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 18, 2010, pet. denied) (mem. op.) (party failed to explain how he was harmed by trial court's exclusion of requested instructions). This is particularly critical, considering the jury's unanimous verdict against Euless. And, during closing argument Euless argued the same themes from the proposed instructions. Euless has not shown how or why inclusion of the instructions would have caused the jury to decide the case differently. *See Hinojosa v. LaFredo*, No. 05-18-01543-CV, 2021 WL 2217165, at *9-10 (Tex. App.—Dallas June 2, 2021, pet. denied) (mem. op.) (absence of requested instruction probably did not cause rendition of improper judgment where jury heard parties' closing arguments on how to apply the law to the facts of the case). We overrule Euless's third issue.

## CONCLUSION

The evidence is legally and factually sufficient to support the jury's verdict regarding the "agreement to be married" and "represented to others" elements of an informal marriage between Danylyk and Hofer. And, the trial court did not abuse its

discretion in refusing to submit Euless's requested jury instructions. Accordingly, we affirm the judgment.


                                        /Robbie Partida-Kipness/
                                        ROBBIE PARTIDA-KIPNESS
                                        JUSTICE

220898F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

CITY OF EULESS, SELF-
INSURED, Appellant

No. 05-22-00898-CV      V.

MARTA DANYLYK, HELMUT
HOFER, SOFIJA HOFER AND
THE TEXAS SUBSEQUENT
INJURY FUND, Appellees

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-01243-
2017.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MARTA DANYLYK, HELMUT HOFER, SOFIJA HOFER AND THE TEXAS SUBSEQUENT INJURY FUND recover their costs of this appeal from appellant CITY OF EULESS, SELF-INSURED.

Judgment entered this 12th day of December, 2023.